## HIRSCHFELD STEEL COMPANY, INC., Appellant

v.

## KELLOGG BROWN & ROOT, INC. and Harris County–Houston Sports Authority, Appellees.

No. 14–04–00504–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 15, 2006.

---

Steven J. Lownds and Marcie Lynn Schout, Dallas, Roger D. Townsend, Houston, for appellants.

Daniel J. Kraftson, McLean, E. Katherine Strahan, Gene L. Locke, Kerry McMahon, and Nicholas A. Simms, for appellees.

Panel consists of Justices FOWLER, FROST, and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

This case arises out of the construction of what is now known as Minute Maid Park and involves disputes among the owner of the ball park, the general contractor, and one of its subcontractors. The subcontractor sued the general contractor asserting contract claims for retainage and contract damages as well as seeking a declaratory judgment against both the owner and the general contractor that the subcontractor's ten-year warranty on the park's retractable roof was void. The general contractor asserted a counterclaim for breach of contract and declaratory relief. The trial court granted summary judgment denying the subcontractor's claims for declaratory relief against the general contractor and the owner. After a jury trial, the trial court rendered judgment that both the subcontractor and the general contractor take nothing on their claims against each other. On appeal, the subcontractor (1) challenges the legal and factual sufficiency of the jury's finding that it did not substantially perform its duties under the subcontract, (2) asserts the trial court abused its discretion in admitting evidence regarding the warranty, (3) claims the trial court erred in not rendering judgment in its favor on an allegedly separate and independent contract claim for maintenance work on the roof, and (4) argues the trial court erred in rendering summary judgment dismissing its declaratory-judgment claims. In its cross-appeal, the general contractor asserts the trial court erred in denying it attorney's fees under provisions of the subcontract allowing the prevailing party in litigation between the subcontractor and the general contractor to recover attorney's fees. We affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Harris County–Houston Sports Authority (hereinafter the "Sports Authority") is the owner of Minute Maid Park, a state-of-the-art professional baseball stadium located in downtown Houston. In December 1997, the Sports Authority and appellee Kellogg Brown & Root, Inc. ("Kellogg") entered into a contract for the construction of Minute Maid Park (hereinafter the "Construction Contract"). In May of 1998, Kellogg and appellant Hirschfeld Steel Company, Inc. (hereinafter "Hirschfeld") entered into a subcontract, under which Hirschfeld agreed to provide various metal systems for Minute Maid Park (hereinafter the "Subcontract"). As part of the Subcontract, Hirschfeld agreed to design and build all structural, architectural, electrical, and mechanical components required to provide a complete and working retractable roof system for Minute Maid Park (hereinafter "Roof System"). Under the Subcontract, Hirschfeld

also was required to warrant various aspects of the Roof System for ten years.

### Performance of First–Year Maintenance Services

Hirschfeld subcontracted with Uni–Systems, Inc. to perform some of the services required under the Subcontract. Uni–Systems provided some first-year maintenance services for the Roof System, but a dispute arose over who was supposed to pay for these services. The Sports Authority asserted that first-year maintenance services were included in the Construction Contract and should be performed at no additional cost to the Sports Authority. Kellogg asserted that these services were not included in the Construction Contract and that Kellogg was entitled to a change order under that contract giving it additional compensation for providing these services. As between the Sports Authority and Kellogg, an arbitration panel eventually ruled against the Sports Authority's position and determined that Kellogg was not obligated to provide the first-year maintenance services without receiving additional compensation. In any event, Uni–Systems allegedly provided various first-year maintenance services and sought payment from Hirschfeld for these services. Hirschfeld settled with Uni–Systems and then sought payment from Kellogg for the first-year maintenance services allegedly provided on its behalf by Uni–Systems.

### Subcontractor's Suspension of Ten–Year Warranty

On September 22, 2000, Hirschfeld sent a letter to Kellogg stating that Hirschfeld was declaring the ten-year warranty suspended based on the Sports Authority's alleged failure to perform maintenance on the Roof System allegedly required by the ten-year warranty. Hirschfeld asserted that the warranty would be suspended until Hirschfeld reinstated the warranty based on the occurrence of various events, including completion of all repairs necessitated by the Sports Authority's failure to perform the required maintenance and the performance of all required maintenance on the roof mechanism. Hirschfeld did not thereafter reinstate its ten-year warranty.

### Settlement Agreement Between Owner and General Contractor

Kellogg and the Sports Authority finally resolved all of their differences regarding this project and entered into a settlement agreement effective March 29, 2002. This agreement provided that Kellogg would receive final payment from the Sports Authority by April 26, 2002. In this agreement, Kellogg agreed that the ten-year warranty on the Roof System is in full force and effect and is enforceable directly against Kellogg notwithstanding the purported revocation of this warranty by Hirschfeld.

### Litigation

In May 2002, Hirschfeld filed this lawsuit against Kellogg and the Sports Authority. Hirschfeld asserted claims against Kellogg for retainage under the Subcontract and other contract damages. Hirschfeld also sought a declaratory judgment against both the Sports Authority and Kellogg that its ten-year warranty on the retractable roof was void because of an alleged failure to perform required maintenance on the Roof System. Kellogg counterclaimed for breach of contract and declaratory-judgment relief.

The Sports Authority and Kellogg filed motions for summary judgment asserting, among other things, that (1) the trial court lacked subject matter jurisdiction over

Hirschfeld's declaratory-judgment claims regarding the ten-year warranty because the claims were not ripe and (2) as a matter of law, the Subcontract does not make performance of maintenance on the Roof System a condition precedent to the existence of Hirschfeld's warranty. The trial court granted both motions for summary judgment and dismissed Hirschfeld's claims for a declaratory judgment that its warranty was void.

The contract claims of Kellogg and Hirschfeld were tried to a jury. The jury found that (1) Hirschfeld did not substantially perform its duties under the Subcontract; (2) $1,259,922 remains unpaid under the Subcontract; (3) remedying or repairing Hirschfeld's defects and/or omissions would cost $500,000; (4) Hirschfeld performed first-year maintenance through its subcontractor Uni–Systems as directed by Kellogg; and (5) $240,000 is the fair and reasonable value of the first-year maintenance provided by Hirschfeld through its subcontractor Uni–Systems.

The trial court signed a final judgment incorporating its summary-judgment rulings on Hirschfeld's declaratory-judgment claims and ordering that Hirschfeld and Kellogg take nothing by their claims. The trial court denied Kellogg's request for attorney's fees under a provision in the Subcontract allowing the prevailing party in litigation between the parties to recover its attorney's fees. Hirschfeld appealed, and Kellogg cross-appealed.

## II. Issues Presented

On appeal, Hirschfeld raises the following issues:

(1) Is the evidence legally and factually sufficient to support the jury's finding that Hirschfeld did not substantially perform its duties under the Subcontract?

(2) Did the trial court reversibly err in admitting allegedly irrelevant testimony regarding Hirschfeld's suspension of its warranty?

(3) In light of the jury's findings, did the trial court erroneously refuse to render judgment in favor of Hirschfeld on its claim for $240,000 and attorney's fees based on its claim regarding first-year maintenance?

(4) Did the trial court err in granting summary judgment as to Hirschfeld's claims against Kellogg and the Sports Authority for declaratory judgment regarding the ten-year warranty?

In its cross-appeal, Kellogg asserts the trial court erred by not awarding Kellogg its attorney's fees.

## III. Standards of Review

In reviewing the trial court's traditional summary judgment as to Hirschfeld's declaratory-judgment claims, we take as true all evidence favorable to the non-movant, and we make all reasonable inferences in the non-movant's favor. *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the non-movant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Id.*

In construing the Subcontract, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex.*

*Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex. 1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). A contract is ambiguous when its meaning is uncertain and doubtful or is susceptible to more than one reasonable interpretation. *Id.* However, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex.2003).

## IV. ANALYSIS

### A. Did the trial court err in granting summary judgment as to the declaratory-judgment claims relating to the ten-year warranty?

In its fourth issue, which we address first, Hirschfeld asserts that the trial court erred in granting summary judgment as to its claims for declaratory judgment regarding the ten-year warranty. In their motions for summary judgment, Kellogg and the Sports Authority argued the trial court lacked subject matter jurisdiction because the declaratory-judgment claims are not ripe and, in the alternative, they fail on the merits. The trial court granted the motions without specifying the grounds. Because the trial court dismissed the claims with prejudice rather than without prejudice, it does not appear that the trial court concluded it lacked jurisdiction under the ripeness doctrine. However, it is possible the trial court found a lack of ripeness and rendered an improper judgment based on this determination. Furthermore, even if the trial court did not conclude the declaratory-judgment claims were not ripe, we still would lack jurisdiction if this were so. Therefore, we must address the ripeness issue in any event.

In deciding a ripeness issue, we ask whether, at the time a lawsuit is filed, the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.,* 971 S.W.2d 439, 442 (Tex.1998). The ripeness inquiry thus focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Id.* By maintaining this focus, the ripeness doctrine serves to avoid premature adjudication. *Id.*

The Texas Declaratory Judgment Act is a remedial statute whose purpose is to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1997). We must construe and administer this statute liberally. *Id.* A court of record, acting within its jurisdiction, has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. *Id.* § 37.003(a) (Vernon 1997). A person with an interest in a written contract may ask a court to determine any question of construction or validity arising under the contract and obtain a declaration of rights, status, or other legal relations thereunder. *Id.* § 37.004(a) (Vernon 1997). A contract may be construed either before or after a breach. *Id.* § 37.004(b).

Kellogg and the Sports Authority assert that Hirschfeld's declaratory-judgment claims regarding the ten-year warranty are not ripe because so far no warranty claims have been made or threatened. However, the record reflects that there is a real and current controversy regarding this warranty. Kellogg relies on its interpretation of the warranty to support the trial court's take-nothing judgment on Hirschfeld's contract

claim. If Hirschfeld's construction of the warranty is correct, this court's analysis of Hirschfeld's first and second issues on appeal will be affected. After careful consideration, we conclude that Hirschfeld's declaratory-judgment claims regarding the ten-year warranty are ripe. *See Patterson*, 971 S.W.2d at 442; *City of Waco v. Tex. Nat. Res. Conserv. Comm'n*, 83 S.W.3d 169, 175–78 (Tex. App.-Austin 2002, pet. denied) (holding that declaratory-judgment claims were ripe). Therefore, we have appellate jurisdiction over these claims, and the trial court erred to the extent it granted summary judgment on this basis.

■ We now must decide whether the trial court erred in refusing to grant Hirschfeld's request for a declaratory judgment that its ten-year warranty is void and its revocation of this warranty was effective. Hirschfeld argues that it no longer owes any obligations under the ten-year warranty on the Roof System because alleged express conditions precedent—scheduled inspections and maintenance—did not occur. Hirschfeld asserts that the performance of the inspections and maintenance is a condition precedent to the existence of the ten-year warranty as a matter of law, or in the alternative, that the Subcontract is ambiguous in this regard.

The Subcontract states the following:

4. This Subcontractor shall provide a Ten (10) Year Warranty for the Mechanized Retractable Roof System which incorporates the Structural Steel, Roof Deck and Roof Mechanization System in its entirety. The Ten–Year Warranty shall provide the following coverage:

a. This Subcontractor shall warrant the structural steel and deck against all defects in quality and workmanship, manufacture and installation for a period of ten (10) years, from the date of Substantial Completion of the project.

b. This Subcontractor shall warrant the roof mechanism against all defects in quality and workmanship, manufacture and installation for a period of ten (10) years, from the date of Substantial Completion of the project.

c. This Subcontractor shall warrant the design of the roof mechanism and the roof Structure [sic] against errors and omissions for a period of ten (10) years from the date of Substantial Completion of the project.

5. This Subcontractor shall warrant the interface between design of the structural Roof [sic] system and the roof mechanism for a period of ten (10) years from the date of final completion of the project. The following clarifications are acknowledged as a basis of Subcontractor's [Guaranteed Maximum Price]:

a. This Subcontractor shall warrant the design, manufacture, and installation of the roof mechanism to perform [its] intended purpose of; [sic] opening and closing the roof structure without excessive noise, excessive vibration, and/or excessive wear for a period of ten (10) years from the date of Substantial Completion of the project.

b. Acts of God and other normal insurable risks are excluded from this warranty.

c. Architectural elements (i.e. glass, roof membrane) are excluded from this warranty.

d. Adequacy of design of structural roof components to perform as a static roof is excluded from this warranty (i.e. if the roof design is determined to be adequate for a static roof under design loads, this Subcontractor will guarantee the performance of the roof structure and mechanism to jointly perform their designed function; if the roof design

were to be determined to be inadequate for a static roof under design loads, this Subcontractor does not warrant that inadequacy).

6. This Subcontractor shall specify and publish a ten(10) year written maintenance program for the Roof Mechanization System, which includes a manufacturer recommended maintenance schedule. The ten(10) year maintenance program shall be submitted to the Architect/Engineer of record. *However, the Architect/Engineer of record's review comments must not diminish the integrity of the specified maintenance program as a condition of the ten(10) year warranty, unless the subject revisions are accepted by the Contractor.* This Subcontractor's ten (10)[sic] year written maintenance program shall include but is not limited to the following:

a. A schedule of daily and weekly inspections required to be performed by the Owners [sic] Roof Mechanization System operator, which will facilitate identification of potential maintenance issues.

b. A schedule of quarterly required maintenance and inspections to be performed by a maintenance contractor to be selected by the Owner. The Owner shall publish quarterly reports to this Subcontractor, (copied to the Contractor) [sic] The Owner's quarterly maintenance and inspections shall include (at a minimum) but are not limited to the following:

1. The maintenance contractor selected by the Owner shall grease all wheel bearings, lubricate all open gearing, clean power feed rail, clean microwave guide, clean all electrical component cooling fins.

2. The maintenance contractor selected by the Owner shall perform a full system inspection, utilizing a minimum of sixty (60) man hours and two (2) technicians. The full system inspection shall be developed and published by this Subcontractor in accordance with the completed design, and reviewed by the Architect/Engineer of record.

3. The maintenance contractor selected by the Owner shall perform a "point by point" inspection, developed and published by this Subcontractor in accordance with the completed design reviewed by the Architect/Engineer of record on this project.

c. A schedule of annual maintenance and inspections required to be performed by the maintenance contractor selected by the Owner, which shall include all structural, mechanical, and electrical components, including finishes. An inspection report shall be published to this Subcontractor (and copied to the Contractor) [sic] By the Owner, which includes detailed observations and recommendations. The Owner's annual maintenance and inspections shall include (at a minimum) but are not limited to the following:

1. The maintenance contractor selected by the Owner shall perform a "point by point" inspection, developed and published by this Subcontractor in accordance with the completed design, and submitted to the Architect/Engineer of record on this project. The Owner shall submit a copy of the inspection report to this Subcontractor and the Contractor.

2. The maintenance contractor selected by the Owner shall implement a local observation system that will be monitored via modem at all times, each time the roof is operated. The Owner shall submit pertinent information regarding the location of the observation post and contact information shall be submitted to this Subcontractor and the Contrac-

tor. The Owner shall dispatch a local technician to the site in the event any problems are detected, and notify this Subcontractor accordingly. This Subcontractor shall advise the Owner as required to resolve any operational malfunctions. This Subcontractor shall maintain a permanent record regarding issues of this nature throughout the life of the warranty [sic] A complete report regarding issues of this nature shall be submitted to the Contractor by the Subcontractor.

Attachment B of the Subcontract (emphasis added).

 Relying primarily on the italicized language above, Hirschfeld asserts that the written maintenance program described in Paragraph 6 above is a condition precedent and that, if this maintenance program is not followed, then its ten-year warranty is void. To determine whether a condition precedent exists, the intention of the parties must be ascertained, and that can be done only by looking at the entire contract. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex.1990). To make performance specifically conditional, a term such as "if," "provided that," "on condition that," or some similar phrase of conditional language normally must be included. *Id.* If no such language is used, the terms typically will be construed as a covenant in order to prevent a forfeiture. *Id.* Though there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a condition imposed. *Id.* In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible. *Id.* When the intent of the parties is doubtful or when a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition. *Id.* Because of their harshness in operation, conditions are not favored in the law. *Id.*

There is no language in the Subcontract stating that there will be a ten-year warranty from Hirschfeld "if," "provided that," or "on condition that" the written maintenance program is followed. There is no contract language stating that nonperformance of the maintenance program will void the warranty.[1] Hirschfeld focuses on a sentence that uses the word "condition"; however, this sentence notably does not use the term "condition precedent." The term "condition" can mean a condition precedent, but it also can be used more generally to mean a term or provision in a contract that is not a condition precedent. *See* BLACK'S LAW DICTIONARY 312–13 (8th ed.2004) (defining condition as "a future and uncertain event on which the existence or extent of an obligation or liability depends" and also as "a term, provision, or clause in a contract"). In Attachment B of the Subcontract, the parties first describe the ten-year warranty required of Hirschfeld in sections 4 and 5, and then, in section 6, they require Hirschfeld to publish a ten-year written maintenance program, which Hirschfeld must submit to the Architect/Engineer. The sentence upon which Hirschfeld relies states that, although the Architect/Engineer may make comments and suggest revisions to this maintenance program, these comments and suggested revisions

---

1. Elsewhere in the Subcontract, the parties used language creating an express condition precedent. For example, in section 22(C)(8) of the Subcontract's Attachment A, the parties state that "[n]otwithstanding any provision of this Subcontract to the contrary, it is further expressly agreed that final payment by the [Sports Authority] to [Kellogg] is an absolute condition precedent to final payment by [Kellogg] to [Hirschfeld]."

alone do not change the maintenance program unless Kellogg accepts them. In the course of stating this, the parties provided in the Subcontract that the Architect/Engineer's comments "must not diminish the integrity of the specified maintenance program *as a condition* of the ten(10) year warranty, unless the subject revisions are accepted by the Contractor." However, given that these sophisticated parties do not indicate in any other sentence of the Subcontract that performance of the written maintenance is a condition precedent to the existence of Hirschfeld's warranty obligation, it seems unlikely that if they intended as much they would have mentioned it only in passing as they were addressing the effect of the Architect/Engineer's comments on the written maintenance program.

Sections 4 and 5 require Hirschfeld to warrant for ten years (1) the Structural Steel, Roof Deck and roof mechanism against all defects in quality and workmanship, manufacture, and installation, (2) the design of the roof mechanism and roof structure against errors and omissions, (3) the interface between the design of the structural roof system and the roof mechanism, and (4) the design, manufacture, and installation of the roof mechanism to perform its intended purpose of opening and closing the roof structure without excessive noise, excessive vibration, and/or excessive wear. Given these substantial warranties, it would not be reasonable to interpret the passing reference in the Subcontract as stating a condition precedent, and it would not be reasonable to interpret this statement as an intention to void the ten-year warranty based on the failure to make one daily inspection or the failure to grease one wheel bearing, as required by the written maintenance program in section 6.

After considering the entire Subcontract under the applicable legal standard, we conclude that, under the unambiguous language of the Subcontract, performance of the written maintenance plan is not a condition precedent to the existence of Hirschfeld's ten-year warranty. *See Criswell,* 792 S.W.2d at 948–49 (holding that contract language did not make sale of the property on a condominium basis a condition precedent to plaintiff's entitlement to compensation); *Sturges v. System Parking, Inc.,* 834 S.W.2d 472, 474 (Tex.App.-Houston [14th Dist.] 1992, writ dism'd by agr.) (concluding there was no condition precedent under contract as a matter of law). The trial court did not err in granting the traditional motions for summary judgment filed by the Sports Authority and Kellogg and in dismissing with prejudice Hirschfeld's declaratory-judgment claims regarding the ten-year warranty.[2] Accordingly, we overrule Hirschfeld's fourth issue.

### B. Is the evidence legally and factually sufficient to support the jury's finding that the subcontractor did not substantially perform its duties under the Subcontract?

In its first issue, Hirschfeld attacks the legal and factual sufficiency of the evidence to support the jury's finding that Hirschfeld failed to substantially perform its duties under the Subcontract. Because Hirschfeld had the burden of proof as to this issue, for Hirschfeld to succeed in its legal-sufficiency challenge, we must conclude that Hirschfeld conclusively proved it substantially performed its duties under the Subcontract as a matter

---

**2.** Kellogg also asserted a no-evidence motion for summary judgment regarding these claims; however, by concluding the trial court did not err in granting the traditional motion, we need not analyze this additional ground for summary judgment.

of law. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). Hirschfeld asserts it made this showing and therefore the trial court should have awarded it attorney's fees and $759,922—the difference between the amount the jury found was unpaid under the Subcontract ($1,259,922) and the cost of remedying or repairing Hirschfeld's defects and omissions as found by the jury ($500,000). In making this determination, we must consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable a reasonable and fair-minded person to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* at 819. Evidence is conclusive only if reasonable people could not differ in their conclusions. *See id.*

As to Hirschfeld's factual-sufficiency challenge, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet*

*of S. Tex. v. Pascouet,* 61 S.W.3d 599, 615–16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet,* 61 S.W.3d at 616.

The jury found that Hirschfeld did not substantially perform its duties under the Subcontract based on the following instruction regarding substantial performance:

> To establish "substantial performance" Hirschfeld must show that: [sic] it has not willfully departed from the terms of the Subcontract, that it has not omitted essential points of the Subcontract, that it has honestly and faithfully performed the construction contract in its material and substantial particulars, and that the only variance from the strict and literal performance of the Subcontract consists of technical or unimportant omissions or details.

With the exception of using a different word to refer to the Subcontract, this instruction regarding the meaning of "substantial performance" is identical to the instruction proposed by Hirschfeld in its pretrial submission to the trial court. At trial, no party objected to this instruction as to what constitutes "substantial performance."[3] Therefore, we review the sufficiency of the evidence under the above instruction, without regard to whether it is a correct statement of the law. *See St.*

---

**3.** Although Kellogg objected that this instruction failed to specifically state that substantial completion of a project or building is not necessarily the same as a contractor substantially performing its responsibilities under the

contract, the instruction given was consistent with Kellogg's proposed additional instruction. The trial court simply declined to give a more specific instruction in this regard.

*Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 530 (Tex.2003) (stating that appellate courts in civil cases review sufficiency of evidence based on the definitions contained in the charge, unless a party objects to the charge and points out the correct definition that is not being used in the charge); *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000) (holding that court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *L & F Distributors v. Cruz,* 941 S.W.2d 274, 279, 286 (Tex.App.-Corpus Christi 1996, writ denied) (holding that parties are bound by a charge that misinforms the jury about the substantive law unless a party properly brings the defect in the charge to the trial court's attention).

As discussed above, the Subcontract required Hirschfeld to warrant various matters relating to the Roof System for ten years.[4] According to the March 29, 2002 Settlement Agreement between the Sports Authority and Kellogg (hereinafter "Settlement Agreement"), the ten-year warranty commenced on August 1, 2000. Although Kellogg may have admitted in its counterclaim that Hirschfeld "provided" Kellogg with a ten-year warranty, this does not prevent Kellogg from asserting, as it has, that Hirschfeld suspended, revoked, or repudiated the warranty that it provided.

On September 22, 2000, Hirschfeld sent a letter to Kellogg stating the following:

● After the Roof System was put in service and used to support the Sports Authority's use of Minute Maid Park, the Sports Authority failed to perform or cause to be performed the level of maintenance required by Hirschfeld's ten-year warranty on the Roof System and required by the manufacturer's "O & M manual [sic]." As a result of this failure, Hirschfeld believed as of September 22, 2000, that the roof mechanism was unreliable and potentially in disrepair.

● Additionally, because the required maintenance was not being performed by or on behalf of the Sports Authority, the terms of Hirschfeld's ten-year warranty have not been satisfied.

● Hirschfeld believes the Sports Authority's failure to comply with these warranty requirements "entitles [Hirschfeld] to declare its warranty obligations suspended until such time as the roof mechanism commissioning has been completed, all repairs necessitated by [the Sports Authority's] failure to perform the required maintenance have been competed, the manufacturer has inspected and certified that the roof mechanism is in compliance with all original requirements and operating parameters for such mechanism, and [the Sports Authority] or its authorized representative has demonstrated that the required maintenance is being performed on the roof mechanism."

● If all of these conditions are satisfied, then Hirschfeld will acknowledge that

---

4. As quoted above, sections 4 and 5 of Attachment B of the Subcontract state that Hirschfeld "shall warrant" for a period of ten years (1) the design of the Roof System, (2) the interface between the design of the structural roof system and the roof mechanism, and (3) the design, manufacture, and installation of the roof mechanism to perform its intended purpose. In section 20(B) of Attachment A of the Subcontract, Hirschfeld also agreed to "promptly make good, without cost to [Kellogg] or [the Sports Authority], any and all defects due to faulty workmanship and/or materials which may appear within the guarantee or warranty period(s) established in the Contract Documents."

the ten-year warranty is reinstated, effective retroactively to the date the roof mechanism was put in service by the Sports Authority.

Hirschfeld did not reinstate its ten-year warranty after sending this letter.

Although Kellogg and Hirschfeld have different positions as to when any final payment by Kellogg to Hirschfeld was due, under either party's interpretation, the final payment from Kellogg to Hirschfeld, including any retainage owed, was not due before April 26, 2002.[5] There was evidence before the jury that Hirschfeld provided the ten-year warranty but then suspended it on September 22, 2000, and thereafter did not reinstate it. At trial, Hirschfeld's corporate representative testified that (1) the ten-year warranty on the Roof System was "an important and critical part of the undertaking"; (2) something was communicated to the effect that if Hirschfeld was unwilling to offer a ten-year warranty on the Roof System, then Kellogg would not enter into the Subcontract with Hirschfeld; (3) when the parties entered into the Subcontract, "the 10–year warranty that Hirschfeld promised to provide was an essential part of the contract" and (4) he considers the words "suspend" and "revoke" in this context to be essentially the same. There is evidence that from September 22, 2000 forward, Hirschfeld asserted that the ten-year warranty was suspended and not in effect based on the alleged failure to perform an alleged condition precedent—the written maintenance plan. As discussed above, this maintenance plan is not a condition prece-

dent to the existence of the ten-year warranty. Under the applicable standard of review, Hirschfeld did not conclusively prove that (1) it did not willfully depart from the terms of the Subcontract, (2) it did not omit essential points of the Subcontract, (3) it honestly and faithfully performed the construction contract in its material and substantial particulars, and (4) the only variance from the strict and literal performance of the Subcontract consists of technical or unimportant omissions or details. Furthermore, under the applicable standard of review, we conclude that there is factually sufficient evidence to support the jury's finding that, under the jury charge definition, Hirschfeld did not substantially perform its duties under the Subcontract.

■■■ On appeal, Hirschfeld asserts that it conclusively proved substantial performance at trial based on the following arguments:

● Kellogg admitted in the Settlement Agreement that the project was completed by August 1, 2000, and, under Texas law, substantial completion of the Project is the same as substantial performance by Hirschfeld of all of its duties under the Subcontract.

● Kellogg and the Sports Authority received the benefit of their bargain. Hirschfeld performed its work under the Subcontract, and only minor repairs were necessary. Under Texas law, this showing is all that is needed for Hirschfeld to establish substantial performance of its obligations under the Subcontract.

5. At trial, Kellogg asserted that any final payment to Hirschfeld was not due until Kellogg received final payment from the Sports Authority on April 26, 2002. Hirschfeld asserted that, under change order 18 to the Subcontract, final payment from Kellogg was due thirty days after Kellogg issued a final "Certificate for Payment" following Hirschfeld's full

performance of the Subcontract (with certain exceptions). Hirschfeld asserted that the relevant parts of the Subcontract had been fully performed and that the Settlement Agreement constituted the final "Certificate for Payment." Under this theory, final payment, if any, was due thirty days after March 29, 2002, on April 28, 2002.

- The cost of the backcharges on the Subcontract were less then one percent of the Subcontract price. More than ninety-nine percent of the work required by the Subcontract allegedly was performed satisfactorily.

- Once Hirschfeld provided the warranty, any subsequent suspension, revocation, or repudiation of the warranty would be a breach-of-warranty issue that cannot be considered in determining whether Hirschfeld substantially performed all of its duties under the Subcontract, as shown by this court's opinion in *Coastal Chem., Inc. v. Brown*, 35 S.W.3d 90, 93 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

- Any alleged failure to perform contractual covenants that do not include any work on the construction project should not be considered in determining whether Hirschfeld substantially performed all of its duties under the Subcontract.

Without commenting on the validity of any of these substantive legal arguments, as a threshold matter, we note that all of these arguments involve legal standards for what constitutes "substantial performance" that were not submitted to the jury. Significantly, no party objected to the failure to submit these legal standards to the jury, and no party requested that these legal standards be submitted to the jury. Therefore, we cannot use these legal standards in our review of the sufficiency of the evidence to support the jury's finding that Hirschfeld did not substantially perform its duties under the Subcontract. *See Wolff,* 94 S.W.3d at 530; *Osterberg,* 12 S.W.3d at 55; *L & F Distributors,* 941 S.W.2d at 279, 286. Accordingly, we overrule Hirschfeld's first issue.

## C. Did the trial court reversibly err in admitting allegedly irrelevant testimony regarding the subcontractor's suspension of its warranty?

In its second issue, Hirschfeld asserts the trial court abused its discretion in determining that evidence regarding Hirschfeld's suspension of its ten-year warranty was relevant. Hirschfeld claims that it preserved this alleged error by its pretrial motion under Texas Rule of Civil Procedure 248, which states:

> When a jury has been demanded, questions of law, motions, exceptions to pleadings, and other unresolved pending matters shall, as far as practicable, be heard and determined by the court before the trial commences, and jurors shall be summoned to appear on the day so designated.

Tex.R. Civ. P. 248.

Nowhere in its Rule 248 motion does Hirschfeld ask the trial court to exclude any evidence or argue that any evidence is irrelevant. Furthermore, our record does not reflect that Hirschfeld obtained a ruling on this motion.

Hirschfeld also asserts that it preserved error by the following objection at trial:

> [Counsel for Kellogg]: Now, you're aware, aren't you, that it's Hirschfeld's position in this case that it has revoked the warranty with regard to the ten-year warranty?
>
> [Counsel for Hirschfeld]: Objection, Your Honor. This is a judiciary [sic] admission on this issuance of the warranty and there is an issue on this in the motion.
>
> [Trial Court]: Approach.
> (At the Bench, off the record)
> Overruled.

Hirschfeld did not assert in this objection that any evidence was irrelevant. Because it did not voice in the trial court the evi-

dentiary complaint it raises in its second issue on appeal, Hirschfeld failed to preserve error as to this issue. *See Hardin v. Hardin,* 161 S.W.3d 14, 27 (Tex.App.-Houston [14th Dist.] 2004, no pet.). In any event, even if error had been preserved, we could not conclude that the trial court abused its discretion in admitting this evidence. Accordingly, we overrule Hirschfeld's second issue.

**D. In light of the jury's findings, did the trial court erroneously refuse to render judgment in favor of the subcontractor for damages plus attorney's fees based on its claim regarding first-year maintenance?**

In its third issue, Hirschfeld asserts that, based on the jury's verdict, the trial court should have rendered judgment in its favor on its claim for $240,000 plus attorney's fees for first-year maintenance work performed under a contract independent from the Subcontract. The jury found that (1) Hirschfeld performed first-year maintenance through its subcontractor Uni–Systems as directed by Kellogg and (2) $240,000 is the fair and reasonable value of the first-year maintenance provided by Hirschfeld through its subcontractor Uni–Systems. Hirschfeld asserts that, even if it did not substantially perform the Subcontract so as to be entitled to relief thereunder, it still is entitled to recover against Kellogg under an alleged independent oral contract based on these two jury findings.[6] Hirschfeld asserts it does not seek to recover under a theory of quantum meruit.

Although Kellogg asserts that Hirschfeld never pleaded such a claim for breach of an alleged oral contract for first-year maintenance, we presume for the sake of

argument that Hirschfeld did plead such a claim. Nonetheless, we conclude that these two jury findings do not entitle Hirschfeld to relief under this theory. The jury was neither asked about the formation of this alleged oral contract nor instructed that it existed. Even if Kellogg directed Hirschfeld to perform first-year maintenance through its subcontractor Uni–Systems, this direction could have been given even if the maintenance work in question constituted additional work covered by the Subcontract, as asserted by Kellogg. Likewise, a determination of the fair and reasonable value of these services would be appropriate to a quantum meruit claim or to a claim under the Subcontract if no rate of compensation was specified. Even if the second finding were held to be a damages question on this alleged contract claim, we could not imply findings that these damages resulted from a breach of the alleged oral contract because such findings would not be in support of the trial court's judgment. *See* Tex.R. Civ. P. 279 (stating that appellate courts will imply findings of omitted and unrequested essential elements of a claim whose absence from the charge did not draw an objection, if (1) at least one essential element necessarily referable to that claim was found by the jury, (2) there is factually sufficient evidence to support a finding on the omitted elements, and (3) the implied findings support the trial court's judgment); *Gulf States Utilities Co. v. Low,* 79 S.W.3d 561, 564 (Tex.2002) (holding that findings may be deemed under Rule 279 only when they support the trial court's judgment).

After reviewing the record, we conclude that Hirschfeld did not conclusively prove the existence and breach of an indepen-

---

6. If this work fell under the Subcontract, then Hirschfeld's failure to substantially perform the Subcontract would bar its recovery. *See*

*Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex. 1990).

dent oral contract with Kellogg for the provision of first-year maintenance services. Therefore, Hirschfeld's failure to obtain jury findings on this issue precludes recovery on this claim. *See* Tex.R. Civ. P. 279 (stating that "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived"); *In re S.A.P.*, 156 S.W.3d 574, 577 (Tex.2005). Accordingly, we overrule Hirschfeld's third issue.

### E. Did the trial court err in denying the general contractor recovery of its attorney's fees under the Subcontract?

■ The Subcontract contains a provision entitling "[t]he prevailing party in any litigation arising out of any dispute between [Kellogg] and [Hirschfeld]" to recover its attorney's fees and all other costs incurred as a result of this litigation.[7] During trial Hirschfeld and Kellogg stipulated that if either of them were entitled to recover attorney's fees, then a reasonable and necessary amount of such fees would be $1.2 million.[8] The trial court refused to award Kellogg such fees and did not award either side any amount of attorney's fees.

In its issue on cross-appeal, Kellogg asserts that the trial court erred in impliedly concluding that it was not a "prevailing party" entitled to attorney's fees under the Subcontract. Hirschfeld went to trial on a petition that asserted breach-of-contract and declaratory-judgment claims against Kellogg.[9] Likewise, Kellogg went to trial on a counterclaim asserting breach-of-contract and declaratory-judgment claims against Hirschfeld. Although Kellogg requested separate liability and damages questions on its contract counterclaims, the trial court apparently concluded that a jury finding that Hirschfeld did not substantially perform its duties under the Subcontract would be equivalent to a finding that Hirschfeld breached the Subcontract and therefore did not submit a separate liability question as to Kellogg's contract counterclaim. Likewise, the trial court apparently reasoned that question three could serve as part of the determination of the amount that should be deducted from the retainage if Hirschfeld proved substantial performance and that this question also could be used to determine Kellogg's damages, if any, under its counterclaim. During closing argument at trial, Kellogg, without objection, argued that the answer to question three should be at least $3.9 million and as much as $5.2 million. The jury answered "$500,000." Therefore, at trial, Kellogg sought to recover as much as $5.2 million on its contract counterclaim. This amount would be $3,940,078 if $1,259,922 (the amount found by the jury to be unpaid under the Subcontract) is subtracted from the $5.2 million.[10]

---

7. Kellogg also relies on another provision of the Subcontract allowing Kellogg to recover attorney's fees if it is determined to be the "prevailing party" in the litigation; however, the scope of this provision is not broader than the quoted provision and this clause involves the same inquiry into whether Kellogg was the "prevailing party" in this litigation.

8. Though the parties stipulated as to the aggregate amount of fees for each side in the litigation, neither party undertook to segregate fees on a claim-by-claim basis, and nei-

ther party has argued that the Subcontract entitled it to fees as a "prevailing party" on a claim-by-claim basis.

9. More than four months before trial, Hirschfeld dropped from its petition negligence and fraud claims that it had been asserting.

10. Even though the $500,000 found by the jury in question three is less than the $1,259,922 found by the jury to be unpaid under the Subcontract, Kellogg sought in the trial court to recover the entire $500,000 un-

On appeal, Kellogg points to its pleadings and emphasizes the language in its counterclaim, which states that Kellogg sought to recover no more than $700,000 in addition to keeping the retainage. Although Kellogg's counterclaim does say this, Kellogg overlooks the reality that, if the jury had answered "$5.2 million" to question three of the charge, as Kellogg requested, then Kellogg would have been entitled to amend its counterclaim and recover the greater amount awarded by the jury. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939–40 (Tex.1990) (stating that trial court would have abused its discretion if it had denied plaintiff's request to amend his petition after trial to ask for $128,000 in punitive damages, which was the amount awarded by the jury, rather than $100,000, which was the amount requested in his live petition during trial); *Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 776 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (stating that "[a]n amendment is mandatory if it is merely procedural in nature such as conforming the pleadings to the evidence at trial").

In its counterclaim, Kellogg also sought declaratory relief as to eleven matters. Both in its motion for entry of judgment and in one of its motions to modify judgment, Kellogg continued to request declaratory relief under its counterclaim. Kellogg also sought to recover $500,000 based on the jury's answer to question three. Nonetheless, the trial court adhered to its original judgment, which ordered that both Hirschfeld and Kellogg take nothing on all of their claims.

In sum, at trial, Hirschfeld sought approximately $2 million in contract damages plus declaratory relief against Kellogg, and

der its counterclaim. The trial court denied this relief, and Kellogg has not appealed this

Kellogg asserted a counterclaim for approximately $4 to $5 million plus declaratory relief against Hirschfeld. The trial court's judgment ordered that both parties take nothing on their claims. In this context, we conclude the trial court did not err in determining that neither Hirschfeld nor Kellogg was a "prevailing party" in this litigation entitled to all of its attorney's fees under the Subcontract. *See Western Skies P'ship/Physician's Healthcare Assocs., L.C. v. Physician's Healthcare Assocs. L.C.*, No. 08–02–00231–CV, 2004 WL 1078491, at *4 (Tex.App.-El Paso May 13, 2004, no pet.) (holding in memorandum opinion that trial court did not err in concluding that, under contractual provisions awarding fees to "prevailing party" in the litigation, no party prevailed because all parties recovered nothing on their claims and counterclaims). Accordingly, we overrule Kellogg's cross-issue.

## V. Conclusion

Under the unambiguous language of the Subcontract, performance of the written maintenance plan is not a condition precedent to the existence of Hirschfeld's ten-year warranty. Therefore, the trial court did not err in dismissing with prejudice Hirschfeld's declaratory-judgment claims regarding the ten-year warranty. Under the applicable standard of review, there is legally and factually sufficient evidence to support the jury's finding that Hirschfeld did not substantially perform its duties under the Subcontract. Hirschfeld did not preserve error as to whether the trial court abused its discretion by admitting allegedly irrelevant testimony regarding Hirschfeld's suspension of its ten-year warranty. Based on the jury's findings and the evidence at trial, we conclude the

ruling.

trial court did not err in refusing to render judgment in favor of Hirschfeld on its claim seeking compensation for first-year maintenance services. As to Kellogg's cross-appeal, we conclude the trial court did not err in denying Kellogg recovery of all its attorney's fees in this litigation under the "prevailing party" provisions in the Subcontract.

Having overruled all of the issues raised in the appeal and cross-appeal, we affirm the trial court's judgment.