**Affirmed in part; Reversed in part and Opinion Filed August 30, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00547-CV

## IN THE INTEREST OF A.Y.K., M.Y.K. AND A.Y.K., CHILDREN

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-51499-2016**

## MEMORANDUM OPINION
Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Molberg

In this family dispute, the trial court entered a final judgment ordering appellants Muhammad Nabih Y. Kanaan ("Nick") and Yassine Kanaan ("Yassine") to jointly and severally pay $16,025.47 in attorneys' fees to appellee Mennatallah Oussama Jammal ("Jammal") and denying all other relief. In two issues, Nick and Yassine appeal the portion of the judgment awarding attorneys' fees to Jammal and the failure to award attorneys' fees to Yassine. For the reasons explained below, we affirm the judgment in part, reverse it in part, and render a take-nothing judgment on Jammal's cross-claim against Yassine. Because the issues are well-settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

BACKGROUND

The parties are current or former family members. Nick is Yassine's father. Jammal is Yassine's ex-wife.

Yassine and Jammal were divorced on June 14, 2017. While the two were married, they purchased a condominium in Michigan (Michigan condo) and a home in Plano (Plano home). Their agreed final decree of divorce discussed the two properties and directed that they be sold and for the proceeds to be divided according to the decree's terms.

The crux of the present dispute involves Nick's claim that he allegedly loaned Yassine and Jammal $93,500 to purchase those two properties. No debts to Nick were mentioned, divided, or assumed by either party in Yassine and Jammal's divorce decree.

The decree contained mutual releases, warranties, and other provisions in which Yassine and Jammal made certain representations to the other regarding marital debts, including an agreement to indemnify and defend the other as provided in the agreement. For example, in the decree, Yassine and Jammal each released and discharged the other "from every claim, demand, right and obligation whatsoever, both in law and in equity, that either of them ever had or now has against the other or their property upon the reason of any matter, cause, including tort claims of any kind, or thing up to April 4, 2017; provided, however, that neither party is

released or discharged from any obligation, indemnity or warranty under this [decree] or any instrument or document executed pursuant to this [decree]."

The decree contained an indemnification provision that stated as follows:

INDEMNIFICATION

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this Decree.[1] Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at that other party's sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or

---

[1] In another section of the decree, Yassine and Jammal confirmed that he or she had "made a full and fair disclosure of all the assets and liabilities of the parties of which [each was] aware in [his or her] most current sworn inventory and appraisement." The decree also provided, "Any mistakenly omitted liabilities which are later determined to have been the joint liabilities of the parties shall be subject to future allocation by the Court," and "any undivided community liabilities determined to have been intentionally or fraudulently undisclosed by a party in [the decree] are hereby partitioned one hundred percent (100%) to the party who incurred the liability."

instituted against either party that might constitute the basis of a claim for indemnity under this Decree.

The divorce decree also stated, "To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract." The decree contained a paragraph regarding attorneys' fees and expenses for enforcement which stated:

Attorney's Fees and Expenses for Enforcement

Reasonable attorney's fees and expenses of a party incurred in successfully prosecuting or defending a suit under these contractual provisions against the other party or the other party's estate will be recoverable by the successful party in the action.

Yassine and Jammal signed the divorce decree, and their signatures reflected agreement with the decree both as to form and substance. Nick was not a party to the decree.

In addition to claiming that he loaned $93,500 to Yassine and Jammal, Nick also claims in this lawsuit that, after Yassine and Jammal divorced, Yassine made a partial payment to him of fifty percent of the total amount owed. Nick demanded payment from Jammal of the remaining portion and sued her when she refused.

Nick's lawsuit against Jammal was later consolidated with Yassine and Jammal's family court case. In his live pleading, Nick claimed Jammal owes him $46,750 for the monies he alleges he loaned Yassine and Jammal during their marriage, and he sought damages, attorneys' fees, and other relief through various claims, including breach of contract, quantum meruit, money had and received, and unjust enrichment. Nick's live pleading also included a section entitled "vicarious

liability," in which he alleged that at the time of the occurrences giving rise to this lawsuit, Jammal had granted Yassine authority to act on her behalf or, alternatively, had allowed Yassine to believe he had authority to act on her behalf or that the actions Yassine took on her behalf were authorized. Nick claimed Jammal discussed obtaining loans from Nick with Yassine and that she "authorized . . . and allowed [Yassine] to believe that he had authority to obtain loans on their behalf." Nick also claimed "[a]t the time of the events giving rise to this suit, [Yassine] was acting within the scope of authority granted by [Jammal]." Finally, Nick's live pleading claimed, in the alternative, that "after [Jammal] was made fully aware of [Yassine's] actions . . . and the loans obtained by [him] on his and her behalf, [Jammal] approved [Yassine's] actions . . . in obtaining the loans from [Nick] with the intent to validate the actions of [Yassine]."

Jammal filed an answer to Nick's lawsuit and a cross-petition and supplemental cross-petition against Yassine. In her live answer to Nick's claims, she sought attorneys' fees from Nick, and the only basis she specified for such fees was the offer-of-settlement rule in Texas Rule of Civil Procedure 167 and chapter 42 of the Texas Civil Practice and Remedies Code.[2] *See* TEX. CIV. PRAC. & REM. CODE §§ 42.001–.005; TEX. R. CIV. P. 167.

---

[2] Jammal's first amended answer included a section entitled "Attorneys' Fees" that stated:

13.    It was necessary for Defendant to secure the services of Chris J. Harding and the law firm Sullivan & Cook, LLC, licensed attorneys, to prepare and prosecute this suit. Judgment for attorney's fees, expenses, and costs through trial and appeal should be

In her live pleadings against Yassine, Jammal sought, among other things, an award of attorneys' fees under Texas Rule of Civil Procedure 167 and chapter 42 of the Texas Civil Practice and Remedies Code, as well as under the divorce decree's indemnification provision, which is quoted in full above.

Yassine answered Jammal's cross-petition, and in his pleading, Yassine generally denied Jammal's claim. He also asked the court to dismiss Jammal's claim, enter a take nothing judgment, and award him costs and attorneys' fees based on the attorneys' fees provision in the decree that we quoted above.

The parties' claims were tried in a bench trial on September 9, 2019. Nick, Yassine, Jammal, and others testified, and at the conclusion of the trial, the trial court took the matter under advisement.

On January 13, 2020, the trial judge issued a "Court's Memorandum" stating, in pertinent part, that "[t]he Court finds that no financial obligation exists for [Jammal]," "[a]ttorney fees in the amount of $16,025.47 are awarded against [Nick] and [Yassine] [who] are jointly and severally liable," and that "[a]ny and all relief not expressly granted is hereby DENIED." The memorandum instructed Jammal's attorney to draft a proposed final order and, if agreement could be reached, for the

---

granted against Plaintiff and in favor of Defendant for the use and benefit of Defendant's attorney and be ordered paid directly to Defendant's attorney, who may enforce the judgment in the attorney's own name. Defendant requests postjudgment interest as allowed by law.

14. Litigation costs are further recoverable under Texas Rule of Civil Procedure 167 and Chapter 42 of the [Texas Rules of Civil Procedure] [sic].

–6–

parties to submit the proposed order with agreed signatures to the court for the court's own signature by February 27, 2020. Otherwise, the court instructed the parties and counsel to appear at a hearing on February 28, 2020, regarding entry of the final order.

On February 26, 2020, the trial court entered the final judgment at issue in this appeal, and counsel for the parties signed the order and noted agreement as to its form. As to the matters raised in this appeal, the final judgment stated, in part:

Orders

IT IS ORDERED, ADJUDGED AND DECREED that Muhammad Nabih Y. Kanaan and Yassine Kanaan take nothing on their claims against Mennatallah Jammal.

Attorney's Fees and Costs

IT IS ORDERED that a money judgment is awarded to Mennatallah Jammal in the amount of sixteen thousand, twenty-five dollars and forty-seven cents ($16,025.47) for reasonable attorney's fees, with interest at five percent per year from the date the judgment is signed until paid. The judgment, for which let execution issue, is awarded against Muhammad Nabih Y. Kanaan and Yassine Kanaan, as jointly and severally liable parties.

. . . .

Relief Not Granted

All relief requested and not expressly granted is denied. This judgment is final, disposes all claims and all parties, and is appealable.

The final judgment did not specify the basis upon which Jammal's attorneys' fees award was made or how it was calculated.

–7–

After entry of the final judgment, Nick and Yassine sought, and the trial court provided, findings of fact and conclusion of law. In them, the court stated, among other things, that "[n]o contract, oral or otherwise, existed between [Nick] and [Jammal]," "[a]ny monies provided to [Jammal] and [Yassine] by [Nick] were gifts," and Jammal "is entitled to attorney's fees against [Nick] and Yassine . . . as jointly and severally liable parties."

Like the final judgment, the court's findings of fact and conclusions of law did not specify any basis upon which the attorneys' fees award to Jammal was made or how it was calculated. However, in its findings of fact, the trial court stated that Jammal "has incurred $16,025.47 for reasonabl[e] attorney's fees" and that "[d]amages, as used in the indemnification section of the decree, includes attorney's fees." In its conclusions of law, the trial court stated, "[Jammal] is entitled to attorney's fees against [Nick] and [Yassine] as jointly and severally liable parties."

## ANALYSIS

Nick and Yassine raise two issues in this appeal. First, they argue the trial court erred as a matter of law in awarding attorneys' fees to Jammal. Second, they argue the trial court erred in failing to award attorneys' fees to Yassine because, they assert, the evidence legally and factually establishes Yassine's right to the award. Jammal disputes both issues.

*Attorneys' Fees Award to Jammal*

In their first issue, Nick and Yassine argue the trial court erred as a matter of law in awarding attorneys' fees to Jammal.

Generally, we review a trial court's award of attorneys' fees under an abuse of discretion standard. *See Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). Here, however, the issue is whether Texas law recognizes a basis for the recovery of attorneys' fees, which is a question of law that we review de novo. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) (appellate courts review questions of law de novo); *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam) (availability of attorneys' fees under particular statute is question of law) (citation omitted).

"In Texas, as in the federal courts, each party generally must pay its own way in attorney's fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 483 (Tex. 2019) (citations omitted). But in some circumstances, such as when authorized by statute or contract, a prevailing party may recover fees from the opposing party. *See Brewer v. Lennox Hearth Products, LLC*, 601 S.W.3d 704, 721 n.71 (Tex. 2020) ("trial courts do not have inherent authority to award attorney's fees when not provided by contract or statute" but may impose sanctions for bad-faith conduct which can include attorney's fees incurred because of misconduct);[3]

---

[3] No such misconduct is at issue here.

*Rohrmoos Venture*, 578 S.W.3d at 484 ("When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees.") (citations omitted).

Nick and Yassine argue that attorneys' fees are not available to Jammal under statute or contract, which Jammal disputes. As to both appellants, Jammal argues attorneys' fees are available by statute through chapter 42 of the civil practice and remedies code and rule of civil procedure 167. *See* TEX. CIV. PRAC. & REM. CODE §§ 42.001–.005; TEX. R. CIV. P. 167. These authorities provide that if a settlement offer made in accordance with the rule and statute is rejected, and the judgment to be awarded on the monetary claims covered by the offer is significantly less favorable to the offeree than was the offer, the court must award the offering party litigation costs against the rejecting party from the time the offer was rejected to the time of judgment. *See* TEX. CIV. PRAC. & REM. CODE §§ 42.001–.005 (describing parties as either an "offering party" or "rejecting party"); TEX. R. CIV. P. 167.4(a) (describing parties as "offeror" or "offeree"). A judgment award on monetary claims is significantly less favorable than an offer to settle those claims if the rejecting party/offeree is a claimant and the judgment would be less than 80 percent of the rejected offer, or if the rejecting party/offeree is a defendant and the judgment would be more than 120 percent of the rejected offer. *See* TEX. CIV. PRAC. & REM. CODE § 42.004(b); TEX. R. CIV. P. 167.4(b). Litigation costs that may be awarded under

–10–

the statute and rule include, but are not limited to, reasonable attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE § 42.001(5)(D); TEX. R. CIV. P. 167.4(c)(4).

In this case, Jammal cites her October 15, 2018 offer to Nick and Yassine which conveyed, among other non-monetary terms, that "[n]o money [be] paid by any party to the other." Under the circumstances, where no monetary offer was made, and no judgment award on monetary claims was made in Nick or Yassine's favor, the litigation cost-shifting rule was not triggered, and thus no attorneys' fees were recoverable thereunder, because there was no judgment award on monetary claims that was significantly less favorable to Nick or Yassine than Jammal's October 15, 2018 offer. *Cf. Mahaffey v. Washburne*, 582 S.W.3d 527, 529 (Tex. App.—Fort Worth 2018, pet. denied) (concluding that litigation cost-shifting rule was triggered when defendant made offer of roughly $15,000 that claimants rejected prior to non-suiting case). Additionally, even if the rule had been triggered, because Nick and Yassine took nothing by way of judgment, any litigation costs awarded to Jammal could not exceed the total amount of zero, considering that "the litigation costs that may be awarded to any party under this rule" may not exceed "the total amount that the claimant recovers or would recover before . . . subtracting as an offset an award of litigation costs under this rule in favor of the defendant." TEX. R. CIV. P. 167.4(d)(2); *see* TEX. CIV. PRAC. & REM. CODE § 42.004(d); *Mahaffey*, 582 S.W.3d at 529 (stating that, despite rule being triggered, any litigation costs could not exceed the total amount of zero when claimants took nothing by way of judgment

–11–

after non-suiting claims). Thus, Jammal's attorneys' fees award is not authorized by chapter 42 of the civil practice and remedies code or civil procedure rule 167. *See* TEX. CIV. PRAC. & REM. CODE §§ 42.001–.005; TEX. R. CIV. P. 167.

Alternatively, as to Yassine,[4] Jammal also argues attorneys' fees are available by contract through the divorce decree's indemnification provision. We conclude the indemnification provision does not apply under the circumstances. By the plain terms of the indemnification provision in the decree, Yassine's and Jammal's defense and indemnification of the other party is conditioned on the initiation of any "claim, action or proceeding" that "seek[s] to hold *the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party* liable for such obligation, liability, act, or omission" (emphasis added). Because Yassine did not assume the alleged debt to Nick in the decree—nor could he, based on the trial court's unchallenged findings[5]—Jammal could not be considered to be "the party not assuming a debt, an obligation, a liability, an act, or an omission of [Yassine]" with respect to that alleged debt under the indemnification provision.

---

[4] By excluding Nick from her discussion regarding the indemnification provision in her brief, Jammal appears to agree, at least implicitly, that the indemnification does not apply to Nick. Additionally, in the trial court, during his testimony regarding attorneys' fees, Jammal's counsel stated he believed the only basis upon which an attorneys' fees award could be ordered against Nick was under rule 167 and chapter 42 of the civil practice and remedies code. Specifically, he stated, "I believe the only way that Nick is on the hook for any of this is if the Court rules in such a way and then reviews the 167 offer and finds that our offer was more generous than the Court's or equal to the Court's ruling, otherwise, the amount I believe would fall against Yassine through the indemnity clause in the agreed final decree of divorce."

[5] The trial court found that "[n]o contract, oral or otherwise, existed between [Nick] and [Jammal]," and "[a]ny monies provided to [Jammal] and [Yassine] by [Nick] were gifts." None of the parties have challenged those findings in this appeal.

–12–

Because Jammal's fee award against Nick and Yassine is not authorized by statute or contract, we conclude the trial court erred as a matter of law in awarding attorneys' fees to Jammal.  *See Brewer,* 601 S.W.3d at 721 n.71 (courts have no inherent authority to award attorney's fees when not provided by contract or statute); *Rohrmoos Venture*, 578 S.W.3d at 483 (each party generally must pay its own way in attorneys' fees, but prevailing party may recover fees from the opposing party if authorized by statute or contract).

We sustain appellants' first issue.

*Failure to Award Attorneys' Fees to Yassine*

In appellants' second issue, Yassine argues the trial court erred in failing to award Yassine attorneys' fees because he conclusively established his right to an award of attorney fees as a matter of law or, alternatively, because the failure to award any attorney fees after successfully defending against the indemnity claim is against the great weight and preponderance of the evidence.  Jammal disputes this.

As a contractual basis for his alleged right to attorneys' fees, Yassine relies on the attorneys' fees provision in the divorce decree which provides that "[r]easonable attorney's fees and expenses of a party incurred in successfully prosecuting or defending a suit under these contractual provisions against the other party . . . will be recoverable by the successful party in the action."

Based on the plain terms of the attorneys' fees provision in the divorce decree and the trial court's take-nothing judgment on Yassine's claim against Jammal, we

conclude the trial court did not err in failing to award Yassine attorneys' fees because he was not a "successful party" as required by the attorneys' fees provision in the divorce decree. *See Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 289 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (concluding trial court did not err in concluding neither party was a prevailing party in litigation when court's judgment ordered that parties take nothing on their claims) (citing *Western Skies P'ship/Physician's Healthcare Assocs., L.C. v. Physician's Healthcare Assocs. L.C.*, No, 08-02-00231-CV, 2004 WL 1078491, at *4 (Tex. App.—El Paso May 13, 2004, no pet.) (mem. op.)).

We overrule appellants' second issue.

CONCLUSION

We reverse the portion of the final judgment awarding $16,025.47 in attorneys' fees to Jammal, render a take-nothing judgment on Jammal's cross-claim against Yassine, and affirm the judgment in all other respects.


200547f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.Y.K.,
M.Y.K. AND A.Y.K., CHILDREN

No. 05-20-00547-CV

On Appeal from the 469th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 469-51499-
2016.
Opinion delivered by Justice
Molberg. Justices Reichek and
Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the portion of the final judgment awarding $16,025.47 in attorneys' fees to Jammal, **RENDER** a take-nothing judgment on Jammal's cross-claim against Yassine, and affirm the judgment in all other respects.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 30th day of August, 2021.