**Affirmed as Modified and Opinion filed July 25, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00819-CV

---

### CLEMENT YENG, Appellant

### V.

### EVE ZOU AND JIAN ZHONG ZOU, Appellees

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-61716**

---

## O P I N I O N

This appeal arises out of a dispute between the owner of a company and two partners who agreed to buy all of the company's stock. The trial court rendered judgment in favor of the partners and against the owner based upon a favorable jury verdict on the partners' claims for breach of contract, common-law fraud, and statutory fraud under Chapter 27 of the Texas Business and Commerce Code. On appeal, the owner challenges the legal and factual sufficiency of the evidence to

support various jury findings. We conclude that the evidence is legally and factually sufficient to support the jury's first damage finding. We also conclude that, even if the evidence is sufficient to support the jury's second damage finding, the partners cannot recover judgment based upon both findings and are deemed to have elected recovery under the first finding. We further conclude that the evidence is legally and factually sufficient to support the statutory-fraud findings challenged by the owner. Accordingly, we modify the trial court's judgment to change the amount of damages awarded to $180,000, and we affirm the trial court's judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Eve Zou ("Eve") and appellee Jian Zhong Zou ("James") are former spouses. Eve obtained an accounting degree in China before emigrating to the United States. At the time of the transaction made the subject of this lawsuit, Eve had worked as an accountant but was not a certified public accountant. James obtained a bachelor's degree in computer engineering in China and a master's degree in that field from the University of Southern California. During their marriage, the Zous started an import/export business and a property-management business. After their divorce, the Zous continued to operate these two businesses together.

Appellant Clement Yeng owned one hundred percent of the stock in Golden Star Trading Co., Inc. ("Golden Star"), a Texas corporation and wholesaler of Asian groceries in the Houston area. In late 2006, Yeng was interested in selling his stock in Golden Star, and Eve was interested in buying an existing business. The Zous previously had not purchased an existing business. In December 2006, Eve was introduced to Yeng. After their initial meeting, Eve and Yeng began negotiating a potential sale by Yeng of his stock in Golden Star. After considering purchasing this stock with another person, Eve decided to go into business with

2

James regarding the purchase of the Golden Star stock.

The Zous met Yeng on March 5, 2007, at the office of Yeng's attorney, Andy Lai. The Zous and Yeng signed a written agreement that Lai had drafted regarding the sale of Yeng's stock in Golden Star to the Zous ("First Agreement"). Under the First Agreement, the Zous agreed to make certain payments to Yeng and to perform various covenants contained in the Agreement. If the Zous made all payments and performed all covenants contained in the Agreement, it was anticipated that the Zous would purchase Yeng's stock two years later, in March 2009. An accounts receivable report and an accounts payable report for Golden Star were attached to and made a part of the First Agreement. The Zous had not seen these reports before they were presented with the First Agreement.

Effective March 13, 2007, Eve and James entered into a written partnership agreement regarding buying, selling, operating, and managing Golden Star. Within a week, on March 19, 2007, Yeng and Eve signed a second written agreement regarding the sale of Yeng's stock in Golden Star to the Zous ("Second Agreement"). James did not sign the Second Agreement but he testified that anything Eve did regarding Golden Star from the effective date of their partnership forward was done on behalf of their partnership.[1] Many of the terms of the Second Agreement are similar to the terms of the First Agreement, but there are differences. A paragraph regarding accounts receivable and accounts payable from the First Agreement is not contained in the Second Agreement. The First Agreement contains warranties and representations from Yeng and accounts receivable and accounts payable reports for Golden Star. The Second Agreement does not contain any warranties and representations from Yeng or any reports

---

[1] On appeal, Yeng asserts that based upon the Zous' theory of the case and the evidence that they were partners when Eve signed the Second Agreement, this court must analyze this appeal on the basis that Eve signed the Second Agreement on behalf of the partnership.

3

regarding the financial status of Golden Star. The Second Agreement contains a merger clause.

After she signed the Second Agreement, Eve took over management of Golden Star. Accounting discrepancies came to light. Accounts receivables were discovered that were not reflected in the accounts receivable report contained in the First Agreement. The Zous tried for several months to operate Golden Star's business but encountered various problems. By September 2007, the Zous had stopped trying to manage Golden Star's business and were pursuing other business interests.

The Zous filed suit against Yeng and other defendants in October 2007. Yeng also filed suit against the Zous, and the suits were consolidated. The Zous asserted various claims against Yeng, including claims for breach of contract, fraudulent inducement, common-law fraud, and statutory fraud. The Zous also asserted various tort claims against Andy Lai and The Law Office of Andy Lai and Associates. Yeng asserted claims against the Zous, including claims for breach of contract. Following a trial, the jury rendered its verdict as follows:

- Eve, James, and Yeng failed to comply with "the agreement."

- Eve and James's failure to comply was excused.

- Yeng's failure to comply was not excused.

- Yeng committed common-law fraud against both Eve and James.

- Yeng committed statutory fraud against both Eve and James.

- The Zous paid $180,000 to Yeng and this sum of money, if paid now, would fairly and reasonably compensate the Zous for their losses resulting from the occurrence in question.

4

- The difference between the value of the accounts payable as represented at the time of the sale of Golden Star and the actual value at the time the Zous took possession of the business is $170,600 and this sum of money, if paid now, would fairly and reasonably compensate the Zous for their losses resulting from the occurrence in question.

The jury also found in favor of Lai as to all liability questions submitted for claims against Lai. The trial court rendered judgment in favor of the Zous and against Yeng for $350,600 plus awards of reasonable and necessary attorney's fees. The trial court denied Yeng's motion for judgment notwithstanding the verdict, motion to disregard jury findings, and motion for new trial. On appeal, Yeng challenges the legal and factual sufficiency of various jury findings.

## II. STANDARDS OF REVIEW

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* Jurors are the sole judges of witness credibility and the weight to give to testimony. *See id.* at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S.*

*Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the jury, even if we would reach a different answer on the evidence. *Maritime Overseas Corp.*, 971 S.W.2d at 407. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

### III. ISSUES AND ANALYSIS

**A. Did the trial court err in awarding the Zous recovery based upon both of the jury's damage findings?**

In his first issue, Yeng asserts that the evidence is legally and factually insufficient to support the jury's findings in response to parts (a) and (d) of Question 4A, the damages question. In his second issue, Yeng asserts that the trial court erred in rendering judgment in the Zous' favor based upon both damage findings. The trial court submitted a single damage question, Question 4A for the claims for breach of contract, common-law fraud, and statutory fraud. In Question 4A, the trial court asked the jury what sum of money, if paid now in cash, would fairly compensate the Zous for their losses, if any, resulting from the occurrence in question. Parts (a) and (d) of Question 4A submitted two different measures of damages. At the charge conference, no party objected to the form of this damages question. Therefore, this court measures the sufficiency of the evidence using the charge given. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards). In his argument under the

first issue, Yeng sets forth what he contends are the two potentially proper measures of damages and then argues that the evidence is insufficient to show any damage under each of these measures. But, none of the measures articulated by Yeng on appeal were submitted to the jury, and no party objected to the damages question. Therefore, these measures of damages are not the standard by which we measure the sufficiency of the jury's damage findings. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

In response to part (a) of Question 4A, the jury found $180,000 in damages based upon the following measure of damages: "[t]he money paid by James Zou and/or Eve Zou to Clement Yeng." The record contains uncontroverted evidence that the Zous paid Yeng $190,000, and thus there is evidence supporting a finding that the Zous paid Yeng the lower amount of $180,000. Yeng does not assert or show how the evidence is insufficient to support a finding that the Zous paid Yeng $180,000. Under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the jury's finding in answer to part (a) of Question 4A. *See Li Li v. 1821 West Main Development, LLC*, No. 14-10-01227-CV, 2011 WL 5926679, at *5–6 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, pet. denied) (mem. op.). Accordingly, we overrule Yeng's first issue as to the damage finding in response to part (a) of Question 4A.

In response to part (d) of Question 4A, the jury found $170,600 in damages based upon the following measure of damages: "[t]he difference between the value of the accounts payable as represented at the time of the sale of [Golden Star] and the actual value at the time the Zous took possession of the business." We presume, without deciding, that the evidence is legally and factually sufficient to support the jury's damage finding in response to part (d) of Question 4A.

7

Though it is limited to accounts payable and arguably is not a correct statement of the benefit-of-the-bargain or expectancy measure of damages,[2] the measure of damages submitted in part (d) of Question 4A is a benefit-of-the-bargain or expectancy measure of damages, which is designed to restore the injured party to the economic position it would have occupied had the contract been performed or had the representation been truthful. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984); *Parkway Dental Assocs., P.A. v. Ho & Huang Properties, L.P.*, 391 S.W.3d 596, 607–08 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Mays v. Pierce*, 203 S.W.3d 564, 577–78 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).[3] Even though it is limited to the money the Zous paid to Yeng and arguably is not a correct statement of the out-of-pocket or reliance measure of damages, the measure of damages submitted in part (a) of Question 4A is an out-of-pocket or reliance measure of damages, which is designed to put the injured party in as good an economic position as it would have occupied had the contract not been made or had the injured party not been entangled in the transaction involving the fraud. *See Leyendecker & Assocs., Inc.*, 683 S.W.2d at 373; *Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607–08;

---

[2] As discussed above, by failing to object at the charge conference, Yeng waived any objection he may have had to the propriety of the measures of damages contained in the jury charge. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

[3] The Zous assert that the measure of damages submitted in part (d) of Question 4A is an out-of-pocket or reliance measure of damages. But, in a tort context, the Supreme Court of Texas has stated that "the 'benefit of the bargain' measure . . . allows the plaintiff to recover the difference between the value as represented and the actual value received." *Leyendecker & Assocs., Inc.*, 683 S.W.2d at 373. This language is similar to the language of the measure of damages submitted in part (d) of Question 4A. *See id.* If buyers purchased the stock of a company in reliance upon a misrepresentation that the company's accounts payable were lower than they actually were, awarding the buyers the purchase price they paid for the stock in addition to the amount by which the payables were understated would be inconsistent and potentially would put them in a better position than if no misrepresentation had occurred.

*Mays*, 203 S.W.3d at 577–78; *Foley v. Parlier*, 68 S.W.3d 870, 884–85 (Tex. App.—Fort Worth 2002, no pet.).

Recovering both benefit-of-the-bargain or expectancy damages and out-of-pocket or reliance damages for the same loss is inconsistent and impermissible because it is a double recovery. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998); *Leyendecker*, 683 S.W.2d at 373; *Foley*, 68 S.W.3d at 882–83; *Hendon v. Glover*, 761 S.W.2d 120, 122 (Tex. App.—Beaumont 1988, writ denied). Yeng preserved error regarding this complaint by his post-verdict motion raising this issue. *See Waite Hill Servs., Inc.*, 959 S.W.2d at 184; *Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 581–82 (Tex. App.—Beaumont 2008, pet. denied). Because the Zous did not designate which of the two possible damage findings they wished to elect, the trial court should have rendered judgment on the finding in response to part (a) of Question 4A, because it yielded the greater recovery. *See Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987); *Hatfield v. Solomon*, 316 S.W.3d 50, 59 (Tex. App.—Houston [14th Dist.] 2010, no pet.). By rendering judgment awarding the Zous both damage amounts instead of the greater of the two, the trial court erred. *See Waite Hill Servs., Inc.*, 959 S.W.2d at 184; *Leyendecker*, 683 S.W.2d at 373; *Foley*, 68 S.W.3d at 882–83; *Hendon*, 761 S.W.2d at 122. Accordingly, we sustain Yeng's second issue and modify the trial court's judgment to delete the damage award based upon the damage finding in response to part (d) of Question 4A.[4]

---

[4] We need not and do not address Yeng's first issue as to the damage finding in response to part (d) of Question 4A.

**B.** **Is the evidence legally and factually sufficient to support the jury's finding that Yeng made a false representation of a past or existing material fact?**

Under his fourth issue, Yeng asserts that the evidence is legally and factually insufficient to support the jury's finding that Yeng made "a false representation of a past or existing material fact" in response to Question 3 regarding liability for statutory fraud. At the charge conference, no party objected to the form of this question. Therefore, this court measures the sufficiency of the evidence using the charge given. *See Osterberg*, 12 S.W.3d at 55 (Tex. 2000); *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86. On the day the parties signed the First Agreement, Yeng gave the Zous the accounts receivable report and the accounts payable report for Golden Star that were contained in that document. Presuming that the Zous did not review these reports on that day, there is evidence upon which the jury reasonably could have concluded that the Zous reviewed these reports after the First Agreement was signed and before the Second Agreement was signed two weeks later. These reports purported to state Golden Star's accounts receivable and accounts payable as of February 22, 2007. There was evidence at trial that would allow reasonable jurors to conclude that these reports contained false representations of Golden Star's accounts receivable and accounts payable that were material to the Zous' decision to enter into the Second Agreement. In addition, in the First Agreement, Yeng made the following representations and warranties:

> (c) Financial Status. [Yeng] has fully disclosed the financial status of [Golden Star's] financial disclosure [sic]. [Yeng] further represents that there are no liabilities or obligations of [Golden Star], accrued, absolute, contingent, inchoate, or otherwise that arose out of or relate to any matter, act, or omission occurring from the date of [Yeng's] disclosure to the date of [the First Agreement], other than liabilities or obligations incurred in the normal course of business.

10

. . .

(j) Full Disclosure.  No representation, warranty, or covenant made to [the Zous] in this Agreement nor any document, certificate, exhibit, or other information given or delivered to [the Zous] pursuant to this Agreement contains or will contain any untrue statement of a material fact, or omits or will omit a material fact necessary to make the statements contained in this Agreement or the matters disclosed in the related documents, certificates, information, or exhibits not misleading.

On appeal, Yeng argues that the accounts receivable report and the accounts payable report cannot be representations because their purpose in the First Agreement was to identify the accounts that the Zous agreed to assume. Presuming, without deciding, that these reports served this purpose in the First Agreement, this would not change the fact that Yeng gave these reports to the Zous the day they signed the First Agreement, and that these reports purport to state Golden Star's accounts receivable and accounts payable as of February 22, 2007. In addition, as shown in the above-quoted excerpt, Yeng represented in the First Agreement that these reports did not contain any untrue statement of a material fact or any omission of a material fact necessary to make the statements contained in the reports not misleading.

Yeng also argues that the merger clause in the Second Agreement precludes as a matter of law any misrepresentation related to the First Agreement.  That merger clause states:

(d) Entire Agreement.  This Agreement, together with any documents and exhibits given or delivered pursuant to this Agreement, constitutes the entire agreement between the parties to this Agreement.  No party shall be bound by any communications between them on the subject matter of this Agreement unless the communication is (a) in writing, (b) bears a date contemporaneous with or subsequent to the date of this Agreement, and (c) is agreed to by all parties to this Agreement.

11

> On execution of this Agreement, all prior agreements or understandings between the parties shall be null and void.

Under the merger clause, the Second Agreement, once effective, takes the place of the First Agreement, and the First Agreement is no longer a valid contract. Nonetheless, the superseding of the First Agreement does not mean that the reports Yeng gave the Zous cannot form the basis of a claim that the Zous were fraudulently induced to enter into the Second Agreement based upon material misrepresentations contained in these reports regarding Golden Star's accounts receivable and accounts payable.[5] *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America,* 341 S.W.3d 323, 332 (Tex. 2011) (stating that standard merger clause does not bar fraudulent-inducement claim).[6] In addition, even presuming for the sake of argument that the Second Agreement vitiated any express material misrepresentations by Yeng contained in the First Agreement, the Second Agreement did not take effect until the Zous entered into it. Thus, even under this presumption, these material misrepresentations were in effect before the execution of the Second Agreement, so the Zous could have relied upon them in deciding to enter into the Second Agreement.[7]

---

[5] Thus, even if, under the Second Agreement, the Zous no longer had any contractual obligation to assume any of Golden Star's accounts, this change in the Zous' contract obligations did not change Yeng's potential fraudulent-inducement liability based upon material misrepresentations in the reports that he gave the Zous the day they signed the First Agreement.

[6] Yeng cites *Spring Window Fashions Div., Inc. v. Blind Maker, Inc*., 184 S.W.3d 840, 870–71 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.). We conclude that the part of this opinion upon which Yeng relies conflicts with and was abrogated by the Supreme Court of Texas in *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America,* 341 S.W.3d 323, 331–36 (Tex. 2011).

[7] Yeng also asserts that, by finding that the Zous failed to prove any damages in response to damage questions regarding inventory and the accounts receivable, the jury found no actionable representation was made by Yeng regarding Golden Star's inventory and accounts receivable. The proper interpretation of the jury's answers to parts (b) and (c) of Question 4A is that the jury

Considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, the trial evidence would enable reasonable and fair-minded people to find that Yeng made "a false representation of a past or existing material fact" in response to Question 3. *See City of Keller*, 168 S.W.3d at 823, 827; *Energy Maintenance Services Group I, LLC v. Sandt*, No. 14-09-00907-CV, —S.W.3d,—,—, 2012 WL 1038043, at *5–7 (Tex. App.—Houston [14th Dist.] Mar. 29, 2012, pet. denied). Examining the entire record, considering both the evidence in favor of, and contrary to, the challenged finding, and considering and weighing all the evidence, we conclude that the jury's finding that Yeng made "a false representation of a past or existing material fact" is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07; *Energy Maintenance Services Group I, LLC*,—S.W.3d at —, 2012 WL 1038043, at *5–8. Therefore, the evidence is legally and factually sufficient to support this jury finding.[8]

---

found the Zous did not prove by a preponderance of the evidence that they sustained any damage under these two measures of damages; these findings do not constitute findings by the jury that no actionable representation was made by Yeng regarding Golden Star's inventory and accounts receivable. *See Kormanik v. Seghers*, 362 S.W.3d 679, 689–90 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

[8] In a post-submission letter brief, Yeng asserts that the Zous may not recover based upon alleged misrepresentations in these two reports because, in Section 7(b) of the First Agreement, the Zous released all claims related to execution of the First Agreement. Yeng did not raise this argument in his opening brief, so we need not and do not address it. *See Continental Carbon Co. v. National Union Fire Ins. Co. of Pittsburgh*, No. 14-11-00162-CV, 2012 WL 1345748, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2012, no pet.).

13

**C.** **Is the evidence legally and factually sufficient to support the jury's finding that the Zous relied upon a false representation by Yeng?**

Under his fourth issue, Yeng also asserts that the evidence is legally and factually insufficient to support the jury's finding that the Zous relied upon a false representation by Yeng in response to Question 3 regarding liability for statutory fraud. At the charge conference, no party objected to the form of this question. Therefore, we measure the sufficiency of the evidence using the charge given. *See Osterberg*, 12 S.W.3d at 55 (Tex. 2000); *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86. The record contains the following trial testimony from James:

| [James's Attorney]: | And likewise, if you had known that the accounts receivable, as they were listed for you in March 5th, were different than what they really were, would you have purchased this business? |
|---|---|
| [James]: | No. |
| [James's Attorney]: | And are the accounts payable different than what was represented to you, [sic] if you had known that, would you have purchased the business? |
| [James]: | No. |

Considering the evidence in the light most favorable to the challenged finding, indulging inferences and crediting and disregarding evidence in accordance with the governing standard of review, we conclude the trial evidence would enable reasonable and fair-minded people to find that the Zous relied upon a false representation by Yeng. *See City of Keller*, 168 S.W.3d at 823, 827. Examining the entire record, considering both the evidence in favor of, and contrary to, the challenged finding, and considering and weighing all the evidence, we conclude

14

that a finding that the Zous relied upon a false representation by Yeng is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[9]  *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07.  Therefore, the evidence is legally and factually sufficient to support this jury finding.[10]

Having rejected all of Yeng's arguments regarding the Zous' statutory-fraud claim under his fourth issue, we overrule this issue as to the statutory-fraud claim.

## IV. CONCLUSION

The evidence is legally and factually sufficient to support the jury's damages finding in answer to part (a) of Question 4A.  Presuming, without deciding, that the evidence is legally and factually sufficient to support the jury's damages finding in answer to part (d) of Question 4A, the trial court erred in awarding the Zous recovery under both damage findings because these findings were based upon inconsistent measures of damages.  In light of the Zous' failure to elect between these two damage findings, the trial court should have rendered judgment awarding the Zous recovery only on the finding in response to part (a) of Question 4A, because it yielded the greater recovery.  All of Yeng's arguments under the fourth issue regarding the Zous' statutory-fraud claim lack merit.  Because we can affirm the trial court's judgment based upon the statutory-fraud claim, we need not and do

---

[9] Yeng also asserts that the evidence is legally and factually sufficient to support a finding that any such reliance was justifiable. Presuming for the sake of argument that reliance in a statutory-fraud claim must be justifiable, the jury charge did not require that the reliance be justifiable; therefore, in measuring the sufficiency of the evidence, we do not consider whether there is sufficient evidence of justifiable reliance. *See Energy Maintenance Services Group I, LLC*, — S.W.3d at —,2012 WL 1038043, at *7.

[10] Yeng contends that the Zous' fraud claims are barred by the economic-loss rule and sound only in contract.  This assertion lacks merit as to the Zous' claims for fraudulent inducement. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998).

not address Yeng's third issue regarding the breach-of-contract claim or his arguments under the fourth issue regarding the Zous' common-law-fraud claim. Accordingly, we modify the trial court's judgment so that in it the Zous recover from Yeng actual damages in the total amount of $180,000, and we affirm the trial court's judgment as modified.


/s/     Kem Thompson Frost
Justice


Panel consists of Justices Frost, Christopher, and Jamison.