**Reversed and Rendered in Part, Reversed and Remanded in Part, and Opinion filed August 29, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-00974-CV

## SUTAPA GHOSH AND CINEMAWALLA, INC., Appellants,

### V.

## PAWAN GROVER, M.D., 87 MINUTES PRODUCTIONS, L.L.C. AND PAV ENTERTAINMENT, L.L.C., Appellees.

**On Appeal from the 80th District Court
Harris County
Trial Court Cause No. 2008-40721**

## O P I N I O N

Appellees Pawan Grover, 87 Minutes Productions, L.L.C., and PAV Entertainment, L.L.C., sued appellants Sutapa Ghosh and Cinemawalla, Inc., alleging breach of contract, conversion, and common-law fraud. The jury returned a verdict awarding the appellees damages on each cause of action. The trial court entered judgment on the verdict, awarding the appellees $1,498,468 in actual damages and $200,000 in exemplary damages. We reverse and render in part, and reverse and remand in part.

Grover is a physician with a passion for film. In 2006, he and a partner wrote the screenplay for a film called *97 Minutes* and assigned the rights to the screenplay to Grover's company, PAV Entertainment. In November of 2006, Grover formed 87 Minutes for the purpose of producing the film. He named PAV Entertainment as the registered agent for 87 Minutes and, in turn, caused PAV Entertainment to assign the rights to the screenplay to 87 Minutes. He also hired Maureen Doherty as the company's attorney. At all times relevant to the events giving rise to this litigation, Doherty also represented Ghosh and Ghosh's company, Cinemawalla.

Over the course of the next year, the appellees obtained a written commitment from William Hurt, an Academy-Award winning actor, to star in the film. The appellees also procured written commitments from a director, a casting director, and a director of photography. By the end of 2007, however, the appellees had yet to secure financial backing to produce the film. Around that time, Doherty suggested Grover contact Ghosh, who was attempting to produce a film called *Ex-Pats* that, like *97 Minutes*, featured a plot that involved a terrorist attack. Doherty explained that the appellants had a contract with San Luis Cine, a production company owned by a government agency of the Province of San Luis, Argentina. Although San Luis Cine had $4 million in escrow for the production of *Ex-Pats*, Doherty explained, the appellants did not have the actors, directors, or other personnel necessary to produce the film.

In December of 2007, Grover and Ghosh met, and Ghosh verified what Doherty had already told Grover. Grover and Ghosh then agreed to combine the resources of their respective companies and form Cinemawalla 97 Minutes, L.L.C. ("the L.L.C."), for the purpose of producing *97 Minutes*. The following month,

they filed a certificate of formation for the L.L.C., naming 87 Minutes and Cinemawalla as the L.L.C.'s members. The certificate included no information about the capital contributions to be made in exchange for those membership interests. After opening a bank account in the L.L.C.'s name, Grover and Ghosh orally agreed that in exchange for 87 Minutes's membership interest in the L.L.C., the appellees would contribute the rights to the screenplay and to the written commitments Grover had already obtained for the project, as well as an additional $1,000,000—$600,000 cash and a $400,000 credit for the amounts spent getting the film to that point. In exchange for Cinemawalla's membership interest, Ghosh would attempt to modify Cinemawalla's existing contract with San Luis Cine and have the escrowed funds released for the production of *97 Minutes* rather than *Ex-Pats*.

Grover then gave Ghosh the business plan for *97 Minutes* to submit to San Luis Cine for its consideration. Over the course of the next several months, Ghosh repeatedly assured Grover that San Luis Cine had agreed to reallocate the escrowed funds for the production of *97 Minutes* and would release the first portion of the funds at the end of April. Ghosh also explained that San Luis Cine wanted proof of 87 Minutes's capital contribution before it released the funds. Accordingly, Grover wired an additional $633,979 from 87 Minutes's account to the L.L.C.'s account. With Grover's approval, Ghosh then wrote herself a check for $50,200 from the L.L.C.'s account for pre-production expenses she had incurred but for which she could not otherwise reimburse herself until San Luis Cine released the first portion of its funds. Over the course of that month, the parties used money from the L.L.C.'s bank account to buy an airplane that was to be the primary set of the film and to pay the director and the director of photography. They also used $375,000 of the L.L.C.'s funds to pay Hurt half of the

3

fee he required to secure his commitment to the film, and they agreed that the appellants would pay the second half by April 25 with the funds from San Luis Cine. Ghosh and Grover then went to Argentina to prepare for filming, which was scheduled to begin in June. Ghosh took another $2,000 from the L.L.C.'s account for the trip.

The parties' relationship began to deteriorate around April 23, after Grover returned from Argentina. First, he was surprised to learn that Ghosh had sent the director home from Argentina early, contrary to their plan for him to stay there to finish pre-production. The appellants then failed to pay the second half of Hurt's fee by April 25. When Grover confronted Ghosh, she said San Luis Cine would not release the funds until 87 Minutes provided notarized copies of all the L.L.C.'s assignments. Beginning to question Ghosh's credibility, Grover refused to provide the documents until the parties reduced their agreement to writing. Ghosh refused. On April 28, she told Grover that San Luis Cine had reneged on the deal because of his failure to provide the notarized assignments.

In July 2008, the appellees sued the appellants alleging, among other things, breach of contract, conversion, and common-law fraud. Following a trial on the merits, a jury returned a verdict in the appellees' favor on each cause of action.[1] On appeal, the appellants argue: (1) the statute of frauds barred the appellees' breach-of-contract claim, (2) the evidence is legally insufficient to support the jury's verdict on the appellees' conversion claim, (3) the trial court erred in entering judgment in the appellees' favor for their fraud claim because the evidence conclusively established that Grover's reliance on Ghosh's alleged misrepresentations was unjustifiable, (4) the evidence is insufficient to support the

---

[1] The jury also found that Cinemawalla, Inc., was Ghosh's alter ego and thus held her personally liable for the damages against Cinemawalla.

4

amount the jury awarded the appellees for lost profits, and (5) the statute of frauds barred the appellees from recovering benefit-of-the-bargain damages for their fraud claim, and the evidence is insufficient to support the jury's award of $825,000 for the appellees' out-of-pocket expenses.

II

In their first issue, the appellants argue that the statute of frauds barred the appellees' breach-of-contract claim because a promise to make a contribution to a limited liability company is unenforceable unless it is in writing.[2] The appellees disagree, emphasizing that the appellants did not promise to contribute anything *directly* to the L.L.C. Under the oral agreement, the appellees explain, the appellants were "to cause the release of $4 million in funds held in escrow by San Luis Cine . . . to *Cinemawalla, Inc.*" The appellants were then to use those funds "to directly pay the vendors who were to provide pre-production, production, and post-production services needed to make the film 97 Minutes."

Under section 101.151 of the Texas Business Organizations Code ("the Code"), entitled "Requirements for Enforceable Promise," "[a] promise to make a contribution or otherwise pay cash or transfer property to a limited liability company is enforceable only if the promise is: (1) in writing; and (2) signed by the person making the promise." Tex. Bus. Org. Code § 101.151. The Code broadly defines the term "contribution" as:

> [A] tangible or intangible benefit that a person transfers to an entity in consideration for an ownership interest in the entity or otherwise in the person's capacity as an owner or member. The benefit includes cash, services rendered, a contract for services to be performed, a promissory note or other obligation of a person to pay cash or transfer

---

[2] The appellants also raised this issue to the trial court, both in their first amended answer and in their motion for judgment notwithstanding the verdict.

property to the entity, or securities or other interests in or obligations of an entity.

*Id.* § 1.002(9).[3] Notably absent from the Code is language limiting the applicability of either section to *direct* contributions.

A

Reading the relevant parts of sections 1.002(9) and 101.151 together, a promise by an owner or member of an LLC to transfer a tangible or intangible benefit to the LLC—by, for example, transferring cash or rendering services to the LLC—must be in writing and signed to be enforced. Here, the oral agreement that the jury found between the appellants and the appellees was: (1) that Ghosh and Grover, through Cinemawalla and 87 Minutes, respectively, would form the LLC to produce the movie, and (2) that the appellants would "access" the $4 million in escrow and "invest" it "to fund the production of" the movie. This agreement falls within the statute because it is a promise by the appellants to render payment or funding services for the benefit of the LLC, which was the sole owner of the screenplay and was formed for the sole purpose of producing the movie.

The record also demonstrates that the parties intended this conclusion. During Grover's testimony at trial, he explained the terms of the oral agreement to form the L.L.C. as follows:

> I would bring in [a] total of $1 million, $600,000 in cash and $400,000 for the amount I spent to bring all of this project together, including screenplay, executive producer, consultants, et cetera, and so that would be my contribution. And Ms. Ghosh would bring in $4 million from San Luis Cine so we would be able to film the

---

[3] The term is subject to two limited exceptions that are not relevant here. First, it does not include cash or property received by the entity with respect to a promissory note or other obligation to the extent the agreed value of that note or obligation was previously included as a contribution. Tex. Bus. Org. Code § 1.002(9)(A) It also does not include cash or money received by the entity that the person intends to be a loan. *Id.* § 1.002(9)(B).

6

production in San Luis and in Argentina.

Grover further testified, "[T]he whole idea of forming the [L.L.C.] was for the financing. There was no other reason for me to form a company with Ms. Ghosh." Moreover, Grover explained that the reason the funds were not going directly into the L.L.C.'s bank account was because "there would be no sense to wire money to our account [in Houston] and back to Argentina where the film was going to be shot." Therefore, Grover's own testimony conclusively established that the parties' oral agreement called upon the appellants to make a contribution to the L.L.C. Because it is undisputed the agreement was not in writing or signed, section 101.151 prohibits its enforcement.

B

The appellees further argue that even if the statute of frauds rendered the oral agreement unenforceable, the appellants waived the issue by failing to request a jury instruction on the statute of frauds. We disagree.

The appellees correctly state that "[t]he failure to request a jury instruction on an affirmative defense results in waiver of that ground by the party relying on it unless the issue was conclusively established." *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see* Tex. R. Civ. P. 279. But, as explained above, the evidence conclusively showed that the oral promise was for the appellants to make a contribution to the L.L.C., and there was no evidence to the contrary. Therefore, the appellants did not waive the statute-of-frauds defense because it was conclusively established at trial. *See Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971).

Accordingly, we sustain the appellants' first issue, reverse the trial court's judgment to the extent it is based on the appellees' breach-of-contract claim, and render a judgment that the appellees take nothing by way of their breach-of-

contract claim.[4]

III

In their second issue, the appellants argue the evidence is legally insufficient to support the appellees' conversion claim because the allegedly converted money came from the L.L.C.'s bank account and therefore the appellees did not have title to it. For their part, the appellees emphasize that all the money in the L.L.C.'s account came from 87 Minutes, and all of 87 Minutes's money came from Grover personally. Therefore, Grover contends, he had the right to immediate possession of the money because he was entitled to rescind the allegedly fraudulently induced contract.

Under the jury charge, to prevail on their conversion claim, the plaintiffs had to prove that (1) the plaintiffs owned, had legal possession of, or was entitled to possession of the property; (2) the defendant unlawfully and without authorization assumed and exercised control over the property, to the exclusion of and inconsistent with the plaintiffs' rights as owners; and (3) the defendant refused to return the property. At the charge conference, no party objected to the form of this question. Therefore, this court measures the sufficiency of the evidence using the charge given. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). In a legal-sufficiency review, we view all evidence in the light most favorable to the challenged finding and appealed judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 732–33 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). We must credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder

---

[4] Having reached this conclusion, we need not address the appellants' alternative argument that the oral agreement was unenforceable because it lacked essential terms.

could not. *City of Keller*, 168 S.W.3d at 827. The fact finder is the only judge of the witnesses' credibility and the weight to give their testimony. *Id.* at 819.

According to the appellees, Ghosh converted money when she wrote herself the checks for $50,200 and $2,000 from the L.L.C.'s bank account. On appeal, the appellees rely on this court's opinion in *Houston National Bank v. Biber*, in which this court addressed the issue of when an action will lie for conversion of money. *See* 613 S.W.2d 771, 774–75 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). But the *Biber* case does not dispose of the requirement that the plaintiffs owned, had legal possession of, or were entitled to possession of the money allegedly converted. *See id.* at 774. After Grover deposited the money into 87 Minutes's bank account, Grover no longer owned, possessed, or was entitled to possession of the money. After 87 Minutes deposited the money into the L.L.C.'s account, 87 Minutes no longer owned, possessed, or was entitled to possession of the money. Grover argues that he had the right to immediate possession of the money because he was entitled to rescind the fraudulently induced contract. Assuming that this argument otherwise would be meritorious, it is without merit because, as explained above, there was no legally enforceable contract to rescind.

Accordingly, we sustain the appellants' second issue, reverse the trial court's judgment to the extent it is based on the appellees' conversion claim, and render a judgment that the appellees take nothing by way of their conversion claim.

IV

In their third issue, the appellants argue the trial court erred in rendering judgment in the appellees' favor on their fraud claim because the evidence conclusively negates justifiable reliance by Grover on Ghosh's statements about the contract between Cinemawalla and San Luis Cine. But, the jury charge did not require that Grover's reliance be justifiable. At the charge conference, no party,

either by objection or requested question, definition, or instruction, complained of the charge's failure to require justifiable reliance. Therefore, in measuring the sufficiency of the evidence, we do not consider whether there is sufficient evidence of justifiable reliance. *See Yeng v. Zou*, No. 14-11-00819-CV, 2013 WL 3864320, at *7, n.9 (Tex. App.—Houston [14th Dist.] Jul. 25, 2013, no pet. h.); *Energy Maint. Servs. Grp. I, LLC v. Sandt*, 401 S.W.3d 204, 214–15 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Because the jury charge did not require the appellees to prove justifiable reliance, any legal insufficiency of the evidence to support a finding of justifiable reliance would not prevent the trial court from rendering judgment on the appellees' fraud claim. *See Yeng*, 2013 WL 3864320, at *7, n.9; *Sandt*, 401 S.W.3d at 214–15. Accordingly, we overrule the appellant's third issue.

V

Because the appellants' fourth and fifth issues challenge the jury's damage awards for the appellees' fraud claim, we address them together.[5] The trial court submitted a damages question that instructed the jury to answer what sum of money would fairly and reasonably compensate the appellees for the damages that resulted from the fraud. More specifically, it asked the jury to provide separate answers for each of three elements of damages: the loss of the benefit of the bargain, expenses, and lost profits. The jury returned an answer of $188,500 for the appellees' future loss of the benefit of the bargain, $825,000 for past expenses, and $188,500 for future lost profits.[6] The jury also determined that the appellees were

---

[5] To the extent the appellants also challenge the damages awards related to the appellees' breach-of-contract claim, we have already rendered a take-nothing judgment against the appellees on that claim.

[6] The jury returned answers of $0 for past loss of the benefit of the bargain, future expenses, and past lost profits.

25-percent responsible for those damages. In their fourth issue, the appellants argue the evidence is legally insufficient to support the amount of lost-profits damages. In their fifth issue, the appellants contend that the statute of frauds bars all recovery for the appellees' fraud claim because "none of the elements of fraud damages submitted is an out-of-pocket measure of damage" and because the evidence is insufficient to support the $825,000 that the jury awarded the appellees for their expenses.

Texas recognizes two measures of direct damages for common-law fraud: benefit-of-the-bargain damages and out-of-pocket damages. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998). The former measure derives from an expectancy theory and evaluates the difference between the value that was represented and the value actually received. *Id.* The statute of frauds bars a fraud claim to the extent a plaintiff seeks to recover as damages the benefit of a bargain that is unenforceable because it fails to comply with the statute of frauds. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). In contrast, out-of-pocket damages derive from a restitutionary theory and measure the difference between the value of that with which the plaintiff parted and the value of that which he received. *Formosa Plastics*, 960 S.W.2d at 49. The statute of frauds does not bar a plaintiff's fraud claim to the extent he seeks out-of-pocket damages incurred in reliance on the defendant's alleged misrepresentations. *Haase*, 62 S.W.3d at 799.

Because the statute of frauds barred enforcement of the oral contract in this case, it similarly barred the appellees' fraud claim to the extent they sought to recover benefit-of-the-bargain damages. *See Haase*, 62 S.W.3d at 799. This includes damages for lost profits. *See Formosa Plastics*, 960 S.W.2d at 49–50 ("[T]he out-of-pocket measure only compensates for actual injuries a party sustains

11

through parting with something, not loss of profits on a bid not made, and a profit never realized, in a hypothetical bargain never struck."). Accordingly, we need not determine whether the evidence is legally sufficient to support the jury's finding that the appellees sustained $188,500 in damages for lost profits because they were not entitled to them as a matter of law. *See Haase*, 62 S.W.3d at 799. Similarly, we sustain the appellants' fifth issue to the extent they argue the statute of frauds barred the appellees' recovery for benefit-of-the-bargain damages.

We now turn to the appellants' argument that the evidence is insufficient to support the jury's finding that the sum of $825,000, if paid now in cash, would fairly and reasonably compensate the appellees for the damages that resulted from the fraud, based upon the appellees' past expenses. The court's charge defined "expenses" as: "The reasonable and necessary costs that Pawan Grover incurred in making contributions of money, time and actor and director agreements to the production company's accounts and to pre-production activities for the film." As the appellants point out, the appellees spent $366,000 on the film before the appellants became involved in the project. Because those expenses could not have been incurred in reliance on Ghosh's misrepresentations, they are not damages that resulted from the fraud as required by the jury charge, and the appellees cannot recover them as out-of-pocket damages for their fraud claim. *See Grant Thornton LLP v. Prospect High Income Fund, ML CBO IV (Cayman) Ltd.*, 314 S.W.3d 913, 923 (Tex. 2010) (explaining that expenses predating the alleged fraud could not have been incurred in reliance on the fraudulent party's misrepresentations). Without this $366,000, the appellees' other evidence of past expenses does not add up to the $825,000 awarded by the jury. Accordingly, that award cannot stand.[7]

---

[7] We therefore need not address whether the amount of the cash contribution that was returned to 87 Minutes in the winding up of the L.L.C., or the fair market value of the airplane that Grover now owns outright, should be taken into account in determining the "costs incurred"

12

We conclude that the evidence is legally insufficient to support the jury's finding of $825,000 in damages for past expenses. But there is sufficient evidence to show that the appellees suffered some out-of-pocket damages as a result of the appellants' fraud. Because the appellants and the appellees contested the issue of damages, we reverse the trial court's judgment and remand the appellees' fraud claim for a new trial on both liability and damages. *See Formosa Plastics*, 960 S.W.2d at 51 (holding that appellate court can remand for new trial when no evidence supports damages awarded but there is evidence of some damages); *see also* Tex. R. App. P. 44.1(b) ("The trial court may not order a separate trial solely on unliquidated damages if liability is contested.").

\* \* \*

In conclusion, we reverse the trial court's judgment with respect to the appellees' breach-of-contract and conversion claims and render a judgment that the appellees take nothing on those claims. We also reverse the trial court's judgment with respect to the appellees' fraud claim to the extent they sought benefit-of-the-bargain damages. Because the evidence is sufficient to support some out-of-pocket damages but not to support the amount awarded by the jury for the appellees' past expenses, we reverse the trial court's judgment with respect to their fraud claim and remand the cause of action for a new trial. *See Formosa Plastics*, 960 S.W.2d at 51.

/s/     Jeffrey V. Brown
         Justice

Panel consists of Justices Frost, Brown, and Busby.

---

under the jury charge. And because the appellants did not object to the charge at trial, we express no opinion on whether it was a correct statement of the law under *Formosa Plastics*, 960 S.W.2d at 49.

13