

# NUMBER 13-17-00627-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CARLOS PASOL AND REE
FAMILY LTD PARTNERSHIP,                                    Appellants,

**v.**

D&C JEWELRY SHOP, INC.,                                    Appellee.

## On appeal from the 444th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Rodriguez and Benavides[1]**
**Memorandum Opinion by Justice Benavides**

By five issues, appellants Carlos Pasol[2] and REE Family Limited Partnership

---

[1] The Honorable Nelda V. Rodriguez, former Justice of this Court, did not participate in this decision because her term of office expired on December 31, 2018.

[2] During the pendency of this appeal, Jovita Pasol, Carlos Pasol's wife, notified this Court of Carlos Pasol's passing in May 2018. He remains a party to the appeal. *See* TEX. R. APP. P. 7.1(a)(1).

(collectively Pasol) challenge the jury verdict in favor of appellee D&C Jewelry Shop, Inc. (Ayala). [3] Ayala sued Pasol for common law fraud, statutory fraud, negligent misrepresentation, partial performance, promissory estoppel, and quantum meruit. The jury awarded Ayala $235,438 in damages, the exact out-of-pocket amount Ayala claimed.

On appeal, Pasol alleges that (1) the statute of frauds precludes the enforceability of an oral promise relating to the sale of real estate unless equitable exceptions are made; (2) the parol evidence rule precludes the admission of prior or contemporaneous collateral agreements or negotiations that change the terms of a final agreement unless an exception is met; (3) the evidence was legally and factually insufficient to prove common law fraud, statutory fraud, negligent misrepresentation, and promissory estoppel; (4) Ayala is not entitled to recovery of damages because he failed on his causes of action; and (5) the finding of quantum meruit was not applicable and should be reversed. We affirm.

## I. BACKGROUND

Pasol was in the business of financing loans on property for individuals. Pasol and Ayala had conducted multiple transactions in the past where Pasol would finance a property that Ayala wanted to purchase for ten percent down, a trust lien against the property, and monthly payments at an interest rate of around 8%. Ayala testified that most of the terms were verbally negotiated and then memorialized in writing.

---

[3] Domingo Ayala is the president and owner of D&C Jewelry Shop, Inc. Although D&C Jewelry Shop, Inc. was listed as the plaintiff in the underlying action, we will refer to D&C Jewelry Shop, Inc. by Ayala's last name for ease of reference.

## A. Executed Land Contract

Although the specific facts of what transpired are disputed between the parties, at some time during 2012, Ayala and Pasol discussed the purchase of a tract of land Pasol owned off Paredes Line Road between Brownsville and Los Fresnos. According to Ayala, at some point in early 2013, Pasol showed him a plat which depicted improvements to the property that allowed the land to operate as a flea market. The original plot of land Pasol owned was sixty acres, but Ayala was interested in purchasing a smaller portion (around fifteen and a half acres). Ayala alleged that Pasol represented to him that the property was a functioning flea market, had a certificate of occupancy from the county, was in compliance with water and sewer requirements, and was available for immediate use. Ayala claimed that Pasol told him that the flea market was in operation under the name "Sapito Market." Ayala also alleged that he and Pasol together calculated potential gross income from the flea market and wrote those calculations on the plat. Pasol told Ayala to visit the land first and then they would discuss pricing and terms. Ayala testified that based on the verbal representations and negotiations, he agreed to purchase the land.

At some point before mid-February 2013, Pasol and Ayala agreed to the terms which were: (1) the sale was owner-financed; (2) the sale price was $600,000; (3) the term was for twenty-five years at an interest rate of 6.5%; (4) Ayala would purchase under D&C Jewelry, Pasol would convey to REE, and REE would be the seller; and (5) Ayala's first payment of $4,189.18 would not be due until September 2013, although interest would accrue during that time. On February 14, 2013, Ayala and Pasol's wife executed

3

the purchase documents at a law office, which included: (1) a warranty deed with vendor's lien, (2) a deed of trust, (3) a real estate lien note, (4) a closing statement, and (5) an acknowledgment regarding attorney representation disclosure. The deed of trust included the metes and bounds description of the property and Ayala was provided with a settlement statement and survey of the property.

### B.    Ayala's Reliance on Pasol's Statements

Two months after the purchase, Ayala discovered the property did not have a certificate of occupancy from the county. According to Ayala, Pasol had been unable to locate the certificate of occupancy upon request prior to Ayala's discovery at the county office. Later, nearly five months after the purchase, Ayala also discovered the property did not have potable water or a proper septic system. Ayala admitted during trial that prior to purchasing the property, he drove by one time, but never inspected it further.

Ayala stated that he went to Pasol after his discoveries and Pasol told him to "open [the flea market] anyway." When Ayala refused, Ayala claimed that Pasol told him to continue with the required improvements and Pasol would either reimburse Ayala for the expenses or deduct that amount from the loan on the property. Pasol disputed this conversation occurred. Ayala continued making improvements, presenting invoices at trial from Zarsky Lumber, Godel Construction, G & T Paving, Peralez Construction, and Montemayor Engineering. Ayala also presented testimony from a laborer on his project. As the work projects progressed, Ayala ran out of money and had to sell some of his other properties.

4

Ayala obtained his certificate of occupancy on April 25, 2014. Ayala testified he then approached Pasol and requested reimbursement and modification of the terms of the note between them, but no agreement materialized.

On July 31, 2014, Pasol mailed Ayala a registered letter requesting payment on the property. No payments were made. On August 19, 2014, Pasol made a demand for payment and notice of intention to accelerate the note. Again, no payments were made by Ayala. Ayala claimed that following the August letter, he went to speak with Pasol to "confront" him about their previous agreement to reimburse for expenses. Ayala stated that Pasol again agreed to reimburse him for his expenses. On October 22, 2014, Pasol delivered a notice of acceleration and notice of foreclosure.

## C.     Lawsuit

In November 2014, Ayala filed an application for a temporary restraining order and injunction to prevent the foreclosure sale. In March 2015, the trial court entered an agreed temporary injunction requiring Ayala to make monthly payments, show proof of payment for 2014 ad valorem taxes and insurance on the property, and ordering Pasol to hold off on any foreclosure sale. Ayala did not provide proof of payment of the 2014 taxes and a tax suit was filed on the property.

Later, Ayala made six payments of $4,189.18 on the note and Pasol paid $36,000 in taxes. The parties agreed to dissolve the agreed temporary injunction. Pasol foreclosed on the property on June 7, 2016.

At trial on Ayala's third amended petition, seventeen questions were submitted to the jury. The jury found for Ayala on all of the issues related to common law fraud,

5

statutory fraud, negligent misrepresentation, partial performance, promissory estoppel, and quantum meruit. The jury awarded Ayala a lump sum amount of $235,438 in damages, the exact out-of-pocket amount Ayala provided proof for. The jury also found the harm caused to Ayala by Pasol was occasioned by fraud and malice but awarded no exemplary damages. Pasol filed a motion for new trial, which was denied. This appeal followed.

## II. LEGAL AND FACTUAL SUFFICIENCY

By his third issue, which we address first, Pasol challenges the legal and factual sufficiency of the jury's findings regarding common law fraud, statutory fraud, negligent misrepresentation, and promissory estoppel.

### A. Standard of Review

When an appellant, such as Pasol, attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. *Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 328 (Tex. App.—Corpus Christi 2012, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)); *Total E& P USA, Inc. v Mo-Vac Serv. Co.*, No. 13-15-00348-CV, 2017 WL 3184655, *5 (Tex. App.—Corpus Christi July 27, 2017, pet. denied) (mem. op.). Such a no-evidence challenge will be sustained only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively

6

the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. In conducting a legal sufficiency review, we review the evidence presented at trial in the light most favorable to the jury's verdict and indulge every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Editorial Caballero*, 359 S.W.3d at 329.

In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant, such as Pasol, did not have the burden of proof, we consider and weigh all the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Id.* at 329 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). We must examine both the evidence supporting and that contrary to the judgment. *Id.* The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Yeng v. Zou*, 407 S.W.3d 485, 489 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). We may not substitute our own judgment for that of the jury, even if we would reach a different answer on the evidence. *Id.* The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Id.*

### B.    Applicable Law and Discussion

Pasol challenges four different claims raised in the jury charge: common law fraud, statutory fraud, negligent misrepresentation, and promissory estoppel.

"[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). The jury charge stated that common

7

law fraud:

> occurs when (a) a party makes a material misrepresentation, (b) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, (c) the misrepresentation is made with the intention that it should be acted on by the other party, and (d) the other party acts in reliance on the misrepresentation and thereby suffers injury.

> **Common Law Fraud** may also occur if a party conceals or fails to disclose material facts of which they have knowledge but the other party does not, resulting in injury or financial detriment to the other party because of the concealment.

The Texas Supreme Court has recognized that a "fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Id.* at 48. Here, Ayala was required to present evidence that Pasol made representations with the intent to deceive and with no intention of performing as represented. *Id.* The evidence presented must be relevant to Pasol's intent at the time the representation was made. *Id.*

The jury heard testimony from Ayala, who testified that that he and Pasol met at Pasol's office multiple times before and after the property was purchased. Ayala explained that Pasol stated the property was a working flea market, with the proper certificates from the county to be operational. According to Ayala, those assurances are what convinced Ayala to enter into the original contract to purchase the property. However, once Ayala became aware that the property was not operational as promised,

8

he testified he went back to speak with Pasol. Ayala stated that the nature of the conversation led him to believe that they would resolve the issue of expenses once the project was complete. Ayala believed that Pasol would either reimburse the money Ayala spent fixing the property so that a certificate of occupancy could be issued or credit the amount of money Ayala spent improving the property towards Ayala's pending mortgage loan. Although Pasol disputed those conversations ever took place, the jury was free to find that Ayala's testimony regarding Pasol's promise to resolve the monetary issues between Pasol and Ayala fit all the elements of common law fraud as stated in the jury charge.

Considering the evidence in the light most favorable to the challenged finding, we conclude the trial evidence would enable reasonable and fair-minded people to find that Pasol made a material misrepresentation with the intention to cause Ayala to rely on it when he told him to continue with the property improvements. *See City of Keller,* 168 S.W.3d at 823, 827; *Yeng*, 407 S.W.3d at 493; *Energy Maint. Servs. Grp. I, LLC v. Sandt,* 401 S.W.3d 204, 211–15 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Examining the entire record, considering both the evidence in favor of, and contrary to, the challenged finding, and considering and weighing all the evidence, we conclude that the jury's finding that Pasol made a material misrepresentation with the intention of Ayala's reliance is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex. 1998); *Energy Maint. Servs. Grp. I, LLC,* 401 S.W.3d at 211–16. Therefore, the evidence is legally and factually sufficient to support this jury finding.

Because the jury's finding of common law fraud would support the entire damages award, we do not need to address the additional findings made by the jury. *See* TEX. R. APP. P. 47.1. We overrule Pasol's third issue.

### III. STATUTE OF FRAUDS AND PAROL EVIDENCE RULE

By his first issue, Pasol argues that the statute of frauds precludes the enforceability of an oral promise or agreement relating to the sale of real estate; that Ayala failed to show partial performance as an exception to the statute of frauds; and that Ayala is barred from relying on testimony and other extrinsic evidence to enforce an alleged oral agreement. By his second issue, Pasol argues that Ayala misapplied the fraud exception to the parol evidence rule.

Although Pasol alleges violations of the statute of frauds and parol evidence rule, Ayala's live pleading does not raise any claims that are dependent on the existence of an enforceable contract. Instead, Ayala asserted that Pasol made fraudulent misrepresentations to him before and after the conveyance of the property which caused him to incur out-of-pocket expenses, and that formed the sole basis for his claim of damages. The statute of frauds may apply to non-contractual claims—for example, the Texas Supreme Court has held that "the Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds." *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). But Ayala does not seek benefit-of-the-bargain damages in this case, nor does he complain that he was fraudulently induced into agreeing to the contract. *See id.* at 798 (noting that "a plaintiff cannot assert a fraudulent inducement

10

claim when there is no contract"). Therefore, the statute of frauds does not apply to Ayala's claim, which exclusively seeks out-of-pocket damages. *See id.* (holding that, to the extent the plaintiff sought benefit-of-the-bargain damages related to a contract that is unenforceable under the statute of frauds, the statute of frauds bars the fraud claim, "but [plaintiff's] fraud claim for out-of-pocket damages, if any, may survive"); *see also Wilhoite v. Sims*, 401 S.W.3d 752, 759 (Tex. App.—Dallas 2013, no pet.) (holding that because the oral agreements were not "a contract for the sale of real estate," the "agreements were not within the statute of frauds."). Similarly, because the meaning of the agreement was not at issue, the parol evidence rule is not applicable. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (providing that, when a contract is unambiguous, parol evidence "will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports").

We conclude that the statute of frauds and parol evidence rule do not apply in this case. We overrule Pasol's first and second issues.

## IV. DAMAGES

By his fourth issue, Pasol claims Ayala is not entitled to recovery of damages because the evidence was insufficient to support the amount of the verdict.

Pasol argues that the amount of actual damages awarded by the jury was not proper because Ayala fails on his causes of action and the evidence was factually and legally insufficient. However, we have found that the evidence supporting the causes of action raised was factually and legally sufficient.

Pasol also argues that the amount of $235,438 awarded by the jury was not supported by evidence. Ayala presented invoices from Zarsky Lumber, Godel Construction, G & T Paving, and Peralez Septic Tank Installation. All the invoices were to Ayala and stated they were paid in full. Pasol did not object to this evidence during trial. The jury also heard testimony from Roberto Gomez, owner of Godel Construction; Montemayor, Ayala's engineer; and Raul Herrera, a laborer who worked on the project. Gomez testified that his bill had been paid on this project. Montemayor testified he was still pending payment from Ayala. Herrera testified about the wage he was paid and that there were other workers on the project who were paid in cash due to their status in the country. Pasol did not object to their testimony either.

The jury heard testimony from these witnesses as to what the companies charged Ayala for their services. The jury also heard testimony from Ayala as to what he understood from Pasol's statements to him and what expenses he incurred to make improvements to the property. The damages found by the jury were supported by the evidence.[4] We overrule Pasol's fourth issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Delivered and filed the
4th day of April, 2019.

---

[4] In his fifth issue, Pasol argues that the jury question regarding quantum meruit was improperly submitted to the jury. Pasol objected at trial and on appeal, Ayala waives any claim under the theory of quantum meruit. Therefore, we do not need to address this issue. *See* TEX. R. APP. P. 47.1.

12